Thomas M. PILLOW, Plaintiff-Appellant,

v.

GENERAL AMERICAN LIFE INSURANCE COMPANY, a corporation, Defendant-Respondent.

No. 38104.

Missouri Court of Appeals, St. Louis District, Division 3.

Feb. 21, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 10, 1978.

Application to Transfer Denied May 9, 1978.

Dallas W. Cox, Jr., St. Louis, for plaintiff-appellant.

Kortenhof & Ely, Frank Strzelec, St. Louis, for defendant-respondent.

KELLY, Judge.

Plaintiff-appellant, Thomas M. Pillow, a practicing Doctor of Chiropractic, brings this appeal from a judgment of the Circuit Court of the City of St. Louis entered upon an order of the court sustaining the motion of defendant-respondent, General American Life Insurance Company,[1] to dismiss Count II of his Second Amended Petition for failure to state a claim or cause of action upon which relief could be granted, and dismissing Count II of plaintiff-appellant's petition with prejudice. The trial court made this order dismissing Count II of plaintiff's petition with prejudice a final judgment for purposes of appeal and this appeal followed.

The sole issue on appeal is whether the trial court erred in dismissing this Second Amended Petition. Because we conclude that the trial court did not err, we affirm.

Count II of Plaintiff's Second Amended Petition reads as follows:

### "COUNT II

Comes now plaintiff and for his claim under COUNT II states and alleges:

#### I

Plaintiff repleads Paragraph I of COUNT I as fully as if herein set out in full.
   [I. That defendant General American Life Insurance Company, a corporation, is and at all times mentioned herein was a Missouri corporation, duly organized and existing under law, engaged in the insur-

---

1. The parties hereinafter shall be referred to as plaintiff and defendant, the positions they occupied in the trial court.

ance business in the City of St. Louis, Missouri, and elsewhere and that said defendant corporation was duly registered in the Department of Insurance of the State of Missouri under the laws of the State of Missouri applying to insurance companies and has duly authorized Stanley M. Richman to act as registered agent and that the office for service of process is 1501 Locust Street, St. Louis, Missouri 63166.]

## II

Plaintiff repleads Paragraph II of COUNT I as fully as if herein set out in full.

[II. That the plaintiff is a duly licensed and practicing chiropractor in the County of St. Charles, State of Missouri, and had always maintained and enjoyed a good reputation in such profession.]

## III

A. That plaintiff rendered chiropractic treatment to Charles Collier, Robert Linhardt, Henry Boster, Winifred Boster, Russell Browne, Samuel Cropper, Darren Hampton, Jr., Tina Linhardt, Sharlene Swinford, Glenda Upton, William D. Upton, Pamela Upton, Robert Merz, Mark Bohn, Deborah Damke, Bruce Bohn, John T. Day, Betty Damke, Virginia Bohn, Roger R. Hollandsworth, Robert Alsop, Joseph W. Rinabarger, Thomas Edinger, James Chumney, Joyce L. Rhodes, William Wichern, Dennis Cowdrick, Cathy L. Allen, Victor Edinger, Bonnie DeLorez, Nancy Sue Young, Dorothy Claxton, William Lee Richards and Esther Edinger and that there was a contract implied in law and in fact between said plaintiff and said persons that plaintiff would exercise skill in the care and treatment of said patients in consideration of said patient's payment to said plaintiff of reasonable sums as and for their care and treatment.

B. That there were then and there existing contracts of assignments as per plaintiff's Exhibits 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56 and 57 attached herewith and made a part hereof between plain-

tiff and his patients, insureds of defendant, wherein plaintiff was assignee on any claim made by plaintiff of his said patients to defendant for plaintiff's chiropractic treatment and professional services and bills rendered.

## IV

A. That said contracts implied in law and in fact between plaintiff and his said patients were tortiously breached and terminated by defendant and said defendant by and through its agents, servants and employees then and there engaged upon the business of said defendant within the course and scope of their employment with said defendant by writing to plaintiff's said patients said letters attached herewith and made a part hereof as plaintiff's Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41 and 42, and that all of said actions were done maliciously, intentionally and without legal justification or legal excuse to induce, to cause and to procure said parties to terminate their contracts with plaintiff as plaintiff's patients.

B. That said contracts implied in law and in fact between plaintiff and his said patients were tortiously breached and terminated by defendant and said defendant by and through its agents, servants and employees then and there engaged upon the business of said defendant within the course and scope of their employment with said defendant by defendant breaching its legal obligation to pay plaintiff under its insurance contract with plaintiff's said patients, when plaintiff had legal rights to receive such benefits as assignee of defendant's insurance benefits to its insured and plaintiff's said patients, said assignments signed by Robert Linhardt, Willis J. Rhodes, Harvel Hampton, Jr., Robert J. Alsop, Joseph W. Rinabarger, Robert Linhardt, Betty Damke, Pearl Allen, Victor Edinger, Bonnie DeLorez, Sue Young, Dorothy Claxton, William Lee Richards, Dennis Cowdrick and Victor Edinger, as per plaintiff's Exhibits 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56 and

57 attached herewith and made a part hereof, and that all of said actions were done maliciously, intentionally and without legal justification or legal excuse to induce, to cause and to procure said parties to terminate their contracts with plaintiff as plaintiff's patients.

## V

That Glenda Spencer, Donna Rawley, Roy Caulk, Darlene Sherman, Catherine Reagan, Darren Hampton, Henry Boster, Cathy Allen, Marie Bruers, Rhea Alliston, Charles Collier, Samuel Cropper, Leroy Cruts, Robert Linhardt, Robert Merz, Gerrand Mellenger, Sharlene Swinford, Randy Kleischute, Collen Kleischute, Tina Linhardt, Byron Miller, Sue Young, Dorothy Claxton, Dennis Cowdrich, Norma J. Browne, Russell Browne, Harvel Hampton, Margaret Bradbury, Roger Hollandsworth, Calvin Grannemann, Kenneth Hebb, Winfred Boster, Opal Richards, Betty Damke, Deborah (sic) Damke, Bonnie DeLorez, Joseph Rinabarger, Dorothy Rinabarger, William Richards, did so terminate their contracts with plaintiff as plaintiff's patients as a direct and proximate result thereof thereby damaging plaintiff.

## VI

WHEREFORE, plaintiff prays judgment under COUNT II against defendant in the sum of One Hundred Thousand Dollars ($100,000.00) compensatory damages and One Hundred Fifty Thousand Dollars ($150,000.00) punitive damages, together with his costs."

It is apparent from a reading of Plaintiff's Second Amended Petition that to ascertain whether plaintiff stated a claim for relief pursuant to Rule 55.05 V.A.M.R.,

which provides what a pleading setting forth a claim for relief shall contain, reference must be made to the contents of the Exhibits 1 through 57 attached to and made a part of said Petition pursuant to authority of Rules 55.12 and 55.22 V.A.M.R.[2]

■ It is plaintiff's position that Count II of his Second Amended Petition pleaded a cause of action for tortious interference with contract. In ruling this Point, the averments of the petition must be construed liberally and favorably to the plaintiff, giving him the benefit of all inferences fairly deducible from the facts stated therein. The facts stated in the petition are to be taken as true, and if the facts pleaded and the reasonable inferences to be drawn therefrom, viewed most favorably from the plaintiff's vantage point, show any ground for relief, the petition may not be dismissed. All pleadings are to be construed so as to do substantial justice, Rule 55.24 V.A.M.R., and exhibits attached to the pleading are a part thereof "for all purposes." Rule 55.12 V.A.M.R. In reviewing the judgment of a trial court dismissing a petition for failure to state a claim or cause of action, the reviewing court will consider all of the facts set out in the petition together with the exhibits attached thereto to ascertain whether the judgment of the trial court was erroneous. *Burckhardt v. General American Life Insurance Company,* 534 S.W.2d 57, 63[4, 5, 6, 8 & 9] (Mo.App.1975). A petition is not to be held insufficient merely because of a lack of definiteness or because of informality in the statement of an essential fact, and under modern pleading principles, a petition is not to be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Laclede Gas Company*

2. These Exhibits are copies. Exhibits 43 through 57 are copies of "Health Insurance Claim Forms," some of which were of such poor quality that it became necessary to resort to the use of a magnifying glass in an effort to ascertain their content, and, in some instances, we are not certain that we were able to decipher entries contained thereon which might be important to our decision. Two sets of these copies were furnished; one in the transcript as a part of the Plaintiff's Second Amended Petition and a second set filed with the Clerk of the Court after oral argument. Neither was of good quality. It is the responsibility of the appellant to furnish to this court a proper transcript, Rule 81.12 V.A.M.R. It is implied that in the case of a document, a readable copy be furnished both the trial and the reviewing courts.

v. *Hampton Speedway Company,* 520 S.W.2d 625, 629–30[4] (Mo.App.1975); *Watson v. Franklin Finance,* 540 S.W.2d 186, 188[3, 4] (Mo.App.1976).

In a claim for tortious interference with contract plaintiff must allege facts showing (1) that a contract was in existence; (2) that the defendant had knowledge of the contract; (3) that the defendant induced or caused the breach of the contract; (4) that the defendant's acts were without legal justification; and (5) that plaintiff was thereby damaged. *Tri-Continental Leasing Co. v. Neidhardt,* 540 S.W.2d 210, 212[3] (Mo.App.1976); *Cady v. Hartford Accident and Indemnity Company,* 439 S.W.2d 483, 485–6[8] (Mo.App.1969). The office of pleadings is to present, define and isolate controverted issues so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of the cause on the merits. *Walker v. Kansas City Star Company,* 406 S.W.2d 44, 54[9] (Mo.1966); *In re Estate of Youngblood,* 447 S.W.2d 824, 827 (Mo.App.1969). The issue then, is whether Plaintiff's Second Amended Petition fulfills this requirement.

Defendant contends that the trial court's ruling whereby plaintiff's petition was dismissed was not erroneous because the plaintiff failed to set forth sufficient facts which would entitle him to recover for tortious interference with contracts with his patients. It urges that plaintiff failed to allege sufficient facts to support each of the five elements of a cause of action for tortious interference with contract.

Missouri is among those states which include as an element of the cause of action for tortious interference with contract that the acts of the defendant inducing or causing the breach of the contract be without justification. *Tri-Continental Leasing Co. v. Neidhart,* supra; *Cady v. Hartford*

*Accident and Indemnity Company,* supra; *Harber v. Ohio National Life Insurance Company,* 512 F.2d 170, 175[4] (8th Cir. 1975).[3]

This is one of the elements defendant contends plaintiff's petition has failed to allege sufficient facts to support.

Since *Downey v. United Weatherproofing, Inc.,* 363 Mo. 852, 253 S.W.2d 976 (1953) it has been the law of this state that one who maliciously or without justifiable cause induces a person to breach his contract with another may be held responsible to the latter for the damages resulting from such breach. Departing from the holding in *Glencoe Sand & Gravel Co. v. Hudson Bros. Commission Co.,* 138 Mo. 439, 40 S.W. 93, 36 L.R.A. 804 (1897) that a claim for relief on the grounds of tortious interference with contract could lie only where the actionable wrong was committed by means of fraud, deceit or coercion, the Court in *Downey* held that a cause of action for tortious interference with contract would lie also where it was alleged that "the wrongdoer maliciously, that is, with knowledge of the contract and without justifiable cause, induced the breach."

The allegations in Count II of plaintiff's Second Amended Petition with which we are here concerned are as follows:

"that all of these actions were done maliciously, intentionally and without legal justification or legal excuse . . ."

Plaintiff's petition, with the Exhibits attached, reveals that the defendant refused to pay certain of plaintiff's charges because, in its opinion, they were either charges for treatments or services a chiropractor in Missouri could not legally render or they were not benefits to which defendant's insureds were entitled under the terms of the group medical payments insurance policy.

---

**3.** There is a line of cases holding that justification is an affirmative defense and may not be considered as support of the trial court's action in sustaining a demurrer unless it appears on the face of the complaint. *Herron v. State Farm Mutual Insurance Company,* 56 Cal. App.2d 202, 14 Cal.Rptr. 294, 363 P.2d 310 (banc 1961). See also *Ringler v. Ruby,* 117 Or.

455, 244 P. 509, 46 A.L.R. 245 (1926); 84 A.L.R. 79, Justification IV a. It has been held that it is not necessary to negative justification in an action for interference. *Law Research Service of Missouri, Inc. v. Western Union Telegraph Company,* 336 F.Supp. 510, 512[2] (E.D. of Mo., 1971); 45 Am.Jur.2d Interference, § 55 Pleading, p. 328.

■ While the term "malicious," when used in connection with a cause of action for tortious interference, alludes to malice in its technical legal sense, that is, the intentional doing of a harmful act without justification or excuse, and does not necessarily include actual malice, that is malice in the sense of spite or ill will, it is conclusionary in nature and unless supported by factual pleadings is not sufficient to comply with the requirements of Rule 55.05 V.A. M.R. that a pleading which sets forth a claim for relief contain a short and plain statement of the facts showing that the pleader is entitled to relief.

In so holding, we are not unaware of the question whether the paragraph in the letters from the defendant to its insureds to the effect that the plaintiff's claims included charges for treatments or services which a chiropractor in Missouri might not render constitutes a matter of law, of fact, or of both. The practice of the chiropractic art is defined in § 331.010 RSMo.1969, as amended by Laws 1969, p. 473 § 1. By definition the practice of chiropractic does not include the use of operative surgery, obstetrics, osteopathy, nor the administration or prescribing of any drug or medicine. So far as we have been able to ascertain there is only a single appellate decision construing the statute. In *State v. Missouri Board of Chiropractic Examiners,* 365 S.W.2d 773, 779[8] (Mo.App.1963) the court held that ear drops, vitamin pills and placebos constituted "medicine" within the meaning of that term as used in the statute and that a chiropractor in his professional capacity was not authorized to administer or prescribe them for a patient. Since that decision there have been no further judicial interpretations of what a chiropractor may or may not do in the practice of his or her profession.[4]

Defendant argues that in sending these letters to its insureds explaining why it had recomputed the benefits payable under the terms of the group insurance policy and in

refusing to pay claims submitted to it by plaintiff on the "Health Insurance Claim Forms" filed as exhibits, it was acting within its legal rights, and therefore, as a matter of law, no liability attached. As authority for this position defendant relies on *Orr v. Mutual Benefit Health & Accident Association,* 240 Mo.App. 236, 207 S.W.2d 511 (1947).

■ *Orr,* supra, stands for the proposition that no liability for procuring a breach of contract exists where the breach is caused by the exercise of an absolute right, that is, an act which one has a definite legal right to do without any qualification. 207 S.W.2d l.c. 515[5]; 84 A.L.R. 63. There are a number of cases so holding. In *Cady v. Hartford Accident and Indemnity Company,* supra, plaintiff brought suit against the liability insurance carrier for another with whom his automobile had been involved in a collision, for tortious interference with contract. The thrust of plaintiff's petition was that after the collision he had entered into an oral contract with a body repair shop to repair the damages to his car—"full repair of all damage proximately caused by the collision"—but that the defendant sent one of its claim-adjusters to the body shop and influenced the party at the body shop to perform less than a full and complete repair of the automobile for a sum less than that quoted to plaintiff for the repairs to his car; that as a proximate result of these inadequate repairs the front end of his automobile collapsed while being driven on a public street, placing him in a position of danger, fear and apprehension for his safety.

In affirming the action of the trial court dismissing plaintiff's petition for failure to state a claim, the court said that in alleging that the defendant "was likely" to be responsible for paying the repair bill under the contract, plaintiff affirmatively alleged that the defendant had an interest in the contract, and therefore any interference by

---

4. Despite the lack of court decisions construing § 331.010 RSMo.1969 as amended by Laws 1969, p. 474, § 1, there have been a number of Attorney General Opinions on the subject. See: Op.Atty.Gen. No. 32, Geekie, 3–10–53; Op.Atty.Gen. No. 148, Akers, 5–2–68; Op.Atty. Gen. No. 55, Holt, 3–18–69; Op.Atty.Gen. No. 239, Holt, 11–10–70; and Op.Atty.Gen. No. 56, Frappier, 9–12–72.

it would not necessarily be wrongful; that in order to state a cause of action, it was necessary that facts be alleged from which it could be found that the interference was not justified. Thus, the court concluded, the petition did not state a claim upon which relief could be granted. At page 485 the court said:

"The absence of justification is an essential element of the claim [for tortious interference with contract]."

■ These cases recognize the principle of law that one who has a present, existing economic interest to protect, such as a prior contract of his own or a financial interest in the affairs of the person persuaded to breach his contract with another, is privileged to prevent performance of the contract which threatens said economic interest. Prosser on Torts, Second Edition, Ch. 23, § 106, p. 737; 86 C.J.S. Torts § 44, p. 967; 45 Am.Jur.2d Interference, § 30, p. 307. See also Annotation, 84 A.L.R. pp. 83–85.

■ However, it is not justification to knowingly procure the breach of a contract where the defendant acted with an improper purpose and sought not only to further his own interest, but in doing so employed improper means. 86 C.J.S. Torts, § 44 p. 967.

■ Plaintiff here, like the plaintiff in *Cady*, supra, has affirmatively alleged that the defendant had a contract of medical insurance with his patients' employer whereby these insureds who were also his patients had authorized defendant to pay directly to him those medical and surgical benefits, if any, otherwise payable to them, but not for those charges, if any, which were in excess of the reasonable and customary charges for the services rendered.

Exhibits 42 through 57. He thereby alleged the economic interest defendant had in respect to the charges for services rendered and for which he sought payment.

The fatal defect in plaintiff's Second Amended Petition, Count II, and one which requires we affirm the action of the trial court, is the failure of the plaintiff to state sufficient facts in support of his allegation that defendant's acts were without justification.

A careful study of the Exhibits 1 through 42, inclusive, attached to plaintiff's petition demonstrates that defendant refused payment for the following items of treatment: "adjunctive therapy," "supplements," "modalities," "foot levelers," "pille-pedic," and "spinal foot stabilizers." In some of these letters defendant also informed its insureds that the major medical insurance coverage afforded them by the group insurance policy did not contain a schedule of reimbursement for medical expenses; that benefits under the policy were limited to the "covered expenses" definition contained in the policy of insurance; that any expense or portion of expense which exceeded the "customary charge for similar services or supplies" was not covered; that charges had to be in connection with the therapeutic treatment of an injury or sickness; and that the defendant might consider only those charges incurred for services for which the particular practitioner was licensed to perform.

We have found nowhere in Count II of plaintiff's Second Amended Petition any factual allegations to support his charge that these statements of the defendant are malicious, i. e. the intentional doing of a harmful act without justification or excuse.[5]

5. In paragraph III of Count I of plaintiff's petition, he does allege that these letters defendant sent to his patients were "false, malicious, and libelous" and contained language that plaintiff was performing chiropractic services outside the scope of his license. But in Count II he fails to state facts which would describe the nature of the treatments rendered, and he does not plead that these treatments for which he charged come within the coverage afforded by the group insurance policy. Plaintiff did not allege that, as a matter of law, these treatments and services for which he made claim are those which he might render as a chiropractor in this state. He seems to rely on the fact that he charged for these services to support his allegation that defendant acted without justification in informing its insureds of its reasons for denying payment under the terms of the policy of insurance.

The law is clear that it is not every interference with contractual relations which gives rise to a claim for damages. It is only where the interference is wrongful that a cause of action exists.

Defendant, we believe, had a right to inform its insureds why it had recomputed claims filed with it by plaintiff in order to collect benefits afforded them under the terms of the group insurance policy it had issued to their employer, McDonnell-Douglas Corporation, except where its explanation was false or improper. Where there is room for difference of opinion relative to what services rendered by a practicing physician are covered by a group insurance policy, the mere fact that the insurer challenges said charges and so informs its insured, in the absence of other facts demonstrating malice in the technical sense, has been held to be privileged. *National Life and Accident Insurance Company v. Wallace,* 162 Okl. 174, 21 P.2d 492 (1933); *Peek v. Northern Pac. Ry. Co.,* 51 Mont. 295, 152 P. 421 (1915).

We conclude that plaintiff has failed to allege sufficient facts to support his claim of tortious interference with contract. Had plaintiff, in the trial court, requested leave to amend his pleading in an effort to overcome this fatal defect, as he might have done pursuant to the provisions of Rule 55.33 V.A.M.R., and had his request been denied, we might be inclined to return this cause to the trial court with directions to afford the plaintiff another opportunity to further amend his petition to state a claim. Plaintiff, however, chose to stand on his pleading in its present form and for that reason we resolve these issues in this court and affirm the judgment of the trial court.

GUNN, P. J., and WEIER, J., concur.