**PHIL CROWLEY STEEL CORPORA-TION, Appellant,**

v.

**SHARON STEEL CORPORATION and NVF Company, Appellees.**

No. 82–1473.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1983.
Decided March 22, 1983.

Kohn, Shands, Elbert, Gianoulakis & Giljum, Alan C. Kohn, Thomas J. Frawley, St. Louis, Mo., for appellant.

Lewis, Rice, Tucker, Allen & Chubb, William G. Ohlhausen, John J. Moellering, St. Louis, Mo., for appellees.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Phil Crowley Steel Corp. (Crowley) appeals from a final judgment entered in the District Court for the Eastern District of Missouri dismissing its claim against NVF Co. and Sharon Steel Corp. (Sharon), a subsidiary of NVF,[1] for tortious interference with Crowley's contractual relations with Macomber, Inc., a wholly-owned subsidiary of Sharon. For reversal Crowley argues that the district court erred in holding that Crowley could not recover as actual damages attorneys' fees incurred in litigation against Macomber for breach of contract because NVF and Sharon were not third parties to the collateral litigation due to their corporate relationships. Crowley also argues that even if actual damages are not recoverable, the district court should not have dismissed the claim for punitive damages. For the reasons discussed below, we reverse the judgment of the district court and remand for further proceedings.

Crowley filed suit against NVF and Sharon for tortious interference with Crowley's contract with Macomber. One element of tortious interference is actual damages. The only damages Crowley alleged were the attorneys' fees incurred when it successfully sued Macomber for breach of contract. The district court, applying Missouri law, noted that attorneys' fees are available as damages when they are incurred in collateral litigation required by the defendant's wrong or breach of duty. The district court limited this rule to apply only when the collateral litigation is with a third party, i.e., someone not a party, or in privity with a party, to the litigation in which the attorneys' fees are sought. Applying this limitation, the district court held that because Sharon and NVF owned Macomber, they were in privity with Macomber and thus attorneys' fees were not recoverable.[2] Because attorneys' fees were the only actual damages alleged and they were unavailable, the district court dismissed Crowley's claim.[3] Crowley's claim for punitive damages was also dismissed because under Mis-

---

1. NVF owns 86 percent of Sharon's stock.

2. *Phil Crowley Steel Corp. v. Sharon Steel Corp.*, 536 F.Supp. 429 (E.D.Mo.1982).

3. Actual damages are an element of tortious interference with contractual relations. *Juengel Constr. Co. v. Mt. Etna, Inc.*, 622 S.W.2d 510, 515 (Mo.App.1981).

souri law punitive damages are unavailable absent actual damages. *Landum v. Livingston,* 394 S.W.2d 573, 578 (Mo.App.1965).

■ Crowley argues for reversal that the district court misapplied Missouri law on recovery of attorneys' fees. The general rule in Missouri, as in many states, is that attorneys' fees cannot be recovered as damages. *Johnson v. Mercantile Trust Co. National Ass'n,* 510 S.W.2d 33, 40 (Mo.1974) (*Johnson*); *Rook v. John F. Oliver Trucking Co.,* 505 S.W.2d 157, 161 (Mo.App.1973). However, this general rule is not applicable when the attorneys' fees were incurred in collateral litigation: " 'Where ... the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorneys' fees necessarily and in good faith incurred in protecting himself from the injurious consequence thereof are proper items of damages.' " *Johnson,* 510 S.W.2d at 40, *quoting State ex rel. Moore v. Morant,* 266 S.W.2d 723, 727 (Mo.App.1954).

■ While the issue has not arisen in Missouri, other states have allowed the recovery of attorneys' fees incurred in a breach of contract action from one whose tortious interference caused the breach. *E.g., M.F. Roach Co. v. Town of Provincetown,* 355 Mass. 731, 247 N.E.2d 377, 379 (Mass.1969); *Dassance v. Nienhuis,* 57 Mich. App. 422, 225 N.W.2d 789, 797 (Mich.1975); *see Kvenild v. Taylor,* 594 P.2d 972, 978 (Wyo.1979). Were it not for the tortfeasor's unjustified interference, there would have been no litigation required because probably there would have been no breach. We believe that Missouri would apply the collateral litigation exception in these circumstances.[4]

The Missouri cases have not explicitly required that the collateral litigation be with a third party. The Restatement of Torts, which the Missouri Supreme Court has followed in many cases, *e.g., Ross v. Clouser,* 637 S.W.2d 11, 14 (Mo.1982) (banc); *Kendall v. Sears, Roebuck & Co.,* 634 S.W.2d 176, 180 (Mo.1982) (banc), does impose a third party requirement.

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a *third person* is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Restatement (Second) of Torts § 914(2) (1979) (emphasis added). Without a third party rule of some sort, plaintiffs would be encouraged to sue a defendant in one action (the "collateral action") for the wrong and in a second for attorneys' fees. This would vitiate the general rule that attorneys' fees are unavailable.[5]

The more troublesome question is whether Sharon and NVF are third parties. The district court held that because of their full ownership of Macomber, Sharon and NVF were "in privity" with Macomber and thus,

---

4. We note that even if the tortfeasor and the breaching party are sued in one lawsuit, attorneys' fees expended against the breaching party have been held recoverable from the tortfeasor. *Prentice v. North Am. Title Guar. Corp.,* 59 Cal.2d 618, 621, 30 Cal.Rptr. 821, 823, 381 P.2d 645, 647 (1963); *M.F. Roach Co. v. Town of Provincetown,* 355 Mass. 731, 247 N.E.2d 377, 379 (Mass.1969); *Dassance v. Nienhuis,* 57 Mich.App. 422, 225 N.W.2d 789, 797 (Mich.1975); *Hoage v. Westlund,* 43 Or.App. 435, 602 P.2d 1147, 1149 n. 2 (1979). Thus in situations like *Ross v. Holton,* 640 S.W.2d 166 (Mo.App.1982), there would be no inconsistent result just because of the order in which an innocent party sued its malefactors.

5. The district court also cited two Washington state cases which applied a third party rule. *Armstrong Constr. Co. v. Thomson,* 64 Wash.2d 191, 390 P.2d 976 (Wash.1964); *Haner v. Quincy Farm Chems., Inc.,* 29 Wash.App. 93, 627 P.2d 571 (Wash.App.1981). These cases were merely cited as support for application of a third party rule; the district court did not go into the detailed holdings of the cases. Both Crowley and Sharon/NVF have taken considerable time in distinguishing, harmonizing and interpreting these cases. We note that *Haner* was recently reversed by the Washington Supreme Court, *Haner v. Quincy Farms Chems., Inc.,* 97 Wash.2d 753, 649 P.2d 828 (Wash.1982), and find it unnecessary to go into the intricacies of Washington law.

for purposes of recovery of attorneys' fees, could not be third parties.[6]

"Privity" is a term with different meanings in different contexts; for example, the concept of "privity of parties" for res judicata purposes is not the same as the concept of "privity of contract." However, all the meanings are merely variations involving some aspect of identity. If parties are identical and have identical interests, they may be subject to the same responsibilities, make use of the same benefits, and be shielded by the same protections.

In this case, Sharon and NVF argue that in effect they are the same as their wholly-owned subsidiary, and because attorneys' fees cannot be recovered from their subsidiary, neither can the fees be recovered from them.

Corporations are separate legal entities and ordinarily are to be regarded as such. *Lawton-Byrne-Bruner Insurance Agency Co. v. Stiers Bros. Construction Co.,* 186 S.W.2d 480, 484 (Mo.App.), *rev'd on other grounds,* 354 Mo. 659, 190 S.W.2d 880 (Mo. 1945). They are often formed specifically because they are distinct from their owners. In cases where a creditor seeks to recover from a parent corporation for its subsidiary's debts, 100 percent ownership and control "does not *of itself* authorize piercing the corporate veil." *C.C. Dillon Co. v. Robinson,* 636 S.W.2d 380, 383 (Mo.App.1982) (emphasis added); *see Phelps v. Missouri-Kansas-Texas R.R.,* 438 S.W.2d 181, 185 (Mo.1968) (*Phelps*), *cert. dismissed,* 394 U.S. 955, 89 S.Ct. 1298, 22 L.Ed.2d 494 (1969). Thus full ownership is not enough to find a parent corporation identical to its subsidiary. It would be incongruous to protect a corporate parent in one situation with a rule that 100 percent ownership *is not* enough to find a parent and subsidiary identical and to protect a corporate parent in another situation—that here—with a rule that 100 percent *is* enough to find a parent and subsidiary identical.

Further, even if a party seeking to pierce the corporate veil establishes that a subsidiary is no more than a parent's "alter ego," the party must establish that equity requires that the two corporations be treated as one. *Phelps,* 438 S.W.2d at 185. This rule has also been applied in a case in which the widow of a corporation executive and majority shareholder sought workmen's compensation. The court held that the party seeking to prove that the corporation was a sham (in this case the corporation itself), and thus that the shareholder could not be an employee, must not only show lack of separate identities, but some equitable ground for piercing the corporate veil. *Lynn v. Lloyd A. Lynn, Inc.,* 493 S.W.2d 363, 366–67 (Mo.App.1973); *see Phelps,* 438 S.W.2d at 185.

In this case, even if there were evidence supporting a finding that Macomber was the "alter ego" of Sharon and NVF, there have been no equitable grounds advanced for treating the corporations as identical. In fact, Sharon and NVF are already substantially protected. One of the elements of tortious interference with contractual relations is the absence of legal justification. A corporation with a financial interest in another corporation is deemed to be justified unless it is shown that the parent employed wrongful means or acted with an improper purpose. Restatement (Second) of Torts § 769; *Pillow v. General American Life Insurance Co.,* 564 S.W.2d 276, 282 (Mo.App.1978) (*Pillow*). This rule provides a parent with a great deal of protection from liability for directing its subsidiary's actions. There is no need to give further protection merely because the damages sought are attorneys' fees.

The district court in effect found that Sharon's and NVF's full ownership of Macomber insulated them from liability for their tortious interference. We believe this finding is inconsistent with Missouri law, which allows recovery from a parent for tortious interference if wrongful means are shown, *Pillow,* 564 S.W.2d at 282, and which presumes a corporation to be a separate entity. *Phelps,* 438 S.W.2d at 185. For this reason, we must reverse.

---

**6.** The Restatement does not refer to privity.

Because of our disposition of this issue, we do not reach the punitive damages issue.

The judgment of the district court is reversed and the case remanded for further proceedings.