**PHIL CROWLEY STEEL
CORPORATION,
Appellee,**

v.

**SHARON STEEL CORPORATION and
NVF Company, Appellants.**

**No. 85–1108.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1985.
Decided Jan. 29, 1986.

Ira M. Berkowitz, St. Louis, Mo., for appellants.

Alan C. Kohn, St. Louis, Mo., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Phil Crowley Steel Corporation (Crowley) brought this action against NVF Company and Sharon Steel Corporation (Sharon), a NVF subsidiary, alleging that NVF and Sharon intentionally interfered with contracts between Crowley and Macomber, Inc., a subsidiary of Sharon. The jury returned a verdict for Crowley. NVF and Sharon appeal, asserting that the district court erred in denying their motion for a judgement n.o.v. on grounds that Crowley failed to produce sufficient evidence that Sharon and NVF interfered without justification in their subsidiary's contracts, or that they and Macomber operated as separate entities capable of interfering with the other's contracts. For the reasons stated below, we affirm the district court.

## I. BACKGROUND.

Macomber, now defunct, fabricated steel products used in constructing buildings. It operated as a wholly-owned subsidiary of Sharon, which supplied Macomber with much of its required steel. Sharon, in turn, was eighty-six percent owned by NVF. Victor Posner, who was president, chairperson of the board of directors, and chief executive officer of both Sharon and NVF, largely exercised control over those companies. Posner also served as chairperson of Macomber's board of directors.

In late 1973 and early 1974, the steel market reflected high demand, but short supply. Because of contractual obligations and the restraints of existing wage and price controls, Macomber did not profit from the rising market.

In February 1974, Posner ordered Don Finley, Macomber's president, to stop Macomber's production of those steel products that did not meet a minimum contract price. The base price demanded by Posner averaged around twenty-five percent more than the prices at which Macomber had already contracted to sell its fabricated steel. Finley protested Posner's demand, informing Posner that Macomber would breach existing contracts and lose goodwill. Posner responded by ordering Finley to "do it."

Posner may well have desired to reroute the steel needed to fulfill Macomber's contracts to another Sharon subsidiary, Ohio Metal Processing Company. Ohio Metal functioned as a "warehouse" operation which purchased steel from Sharon and resold it at inflated prices. Ohio Metal earned much higher profits on its steel sales than Macomber because Ohio Metal was not subject to wage-price controls and incurred no fabricating costs.

Crowley held two contracts to purchase fabricated steel products from Macomber. Following Finley's discussion with Posner, Finley sent Crowley a letter demanding that Crowley pay more for its ordered products because Crowley had inordinately delayed submitting approved drawings of the products. Finley later admitted the untruth of this alleged justification.

Crowley refused to pay the higher price, and Macomber stopped production of the ordered products. Crowley obtained its needs through other fabricators, and by fabricating some of the products itself. It sued Macomber for breach of contract, and was awarded $254,000 after a jury trial. This court affirmed the judgment against Macomber on appeal. *Phil Crowley Steel*

*Corp. v. Macomber, Inc.*, 601 F.2d 342 (8th Cir.1979).

Crowley then initiated this action against NVF and Sharon for interference with Crowley's contracts with Macomber. It prayed for actual damages in the amount of its legal fees in the contract action and for punitive damages. The district court initially dismissed the action, ruling that Crowley had suffered no recoverable actual damages. It reasoned that Crowley could recover its legal fees from Sharon and NVF only if the corporations were third parties to the contract litigation. The court concluded that Sharon and NVF were in "privity" with Macomber through their corporate relationship and therefore were not strangers to the breach of contract litigation.

On appeal, this court reversed and remanded. *Phil Crowley Steel Corp. v. Sharon Steel Corp.*, 702 F.2d 719 (8th Cir. 1983). We concluded that Sharon and NVF had not advanced any legal or equitable grounds for treating the three corporations as one entity, and Crowley could therefore maintain its action for attorneys' fees. We also stated to succeed in its action Crowley must prove that Sharon and NVF interfered with the Macomber-Crowley contracts without legal justification. We observed that, under controlling Missouri law, "[a] corporation with a financial interest in another corporation is deemed to be justified [in interfering with the other's contractual relations] unless it is shown that the parent employed wrongful means or acted with an improper purpose." *Id.* at 722.

On remand, the jury found for Crowley on a general verdict, assessing actual damages against NVF and Sharon of $90,-011.11—the amount of Crowley's attorneys' fees on the contract action. The jury also assessed punitive damages of $30,000 against each of the defendant corporations. NVF and Sharon appeal.[1]

## II. DISCUSSION.

### A. Absence of Justification.

Under Missouri law, Crowley bore the burden of proving that NVF and Sharon interfered with its contracts with Macomber without legal justification. *See Francisco v. Kansas City Star Co.*, 629 S.W.2d 524, 533–34 (Mo.App.1981). NVF's and Sharon's financial interest in Macomber justified their interference in Macomber's contracts to the extent that they did not employ wrongful means or act for an improper purpose when interfering. *Phil Crowley Steel Corp.*, 702 F.2d at 722; *see also Pillow v. General American Life Insurance Co.*, 564 S.W.2d 276, 282 (Mo.App. 1978). NVF and Sharon argue that Crowley failed to prove that they interfered with wrongful means or an improper purpose.

Crowley argues that Finley was acting on behalf of NVF and Sharon when he gave Crowley a false excuse for Macomber's price increase. It asserts that Victor Posner gave Finley the authority to choose the means in which Macomber would breach its contracts when Posner ordered Finley to "do it." According to Crowley, Posner's open order makes NVF and Sharon directly responsible for Finley's misrepresentation. Crowley contends that Finley's misrepresentation thus constituted a wrongful means of interfering by NVF and Sharon. It relies on the Restatement (Second) of Torts § 767 comment c: "Fraudulent misrepresentations are also ordinarily a wrongful means of interference and make an interference improper."

We cannot agree with Crowley that NVF and Sharon are responsible for Finley's misrepresentation. Finley, acting as Macomber's president, chose the means of breaching its contracts with Crowley. Posner neither demanded nor played any part in manufacturing the false excuse that Finley gave Crowley. Moreover, the misrepresentations that usually represent wrongful means are those directed at the party ulti-

---

**1.** NVF and Sharon do not dispute that they both participated in the contractual interference through the actions of their agent, Victor Posner, to the extent that they were able to interfere with the actions of their subsidiary. They did not raise and we do not consider the propri-

ety of the jury holding NVF and Sharon jointly and severally liable for actual damages and, thereafter, assessing punitive damages severally against each defendant, whose wrongful conduct stemmed from the actions of Victor Posner.

mately breaching its contract with another. Posner made no misrepresentations to Finley to induce him to breach Macomber's contracts with Crowley. We therefore conclude that Crowley failed to prove that NVF and Sharon used wrongful means when interfering with the Macomber-Crowley contracts.

■ However, the record discloses sufficient evidence on which the jury could have concluded that NVF and Sharon interfered with the Macomber-Crowley contracts for an improper purpose. The evidence indicated that Posner ordered Finley to breach Macomber's contracts with the full knowledge that such breaches would harm Macomber's financial situation and reputation. More importantly, Posner did not act to protect an interest of NVF or Sharon that the Macomber-Crowley contracts potentially threatened. Rather, Posner acted to the detriment of NVF's and Sharon's interests in Macomber in order to enhance their interests in a separate Sharon subsidiary, Ohio Metal.

NVF and Sharon argue that, under Missouri law, this evidence cannot take them outside their privilege to interfere in Macomber's contracts. They contend that a parent corporation is justified in interfering with a subsidiary's contracts, even if the parent acts to protect its own economic interest, rather than its subsidiary's. NVF and Sharon assert that Posner, acting on their behalf, acted to further the most basic of economic interests—making more money.

We cannot agree that Missouri law defines the parent corporation's privilege to interfere so broadly. Missouri permits a party to interfere with another's contractual relations "when the contract threatens a present, existing economic interest, such as a pecuniary interest in the activities of the party who is induced to breach the contract with another." *Juengel Construction Co. v. Mt. Etna, Inc.*, 622 S.W.2d 510, 515–16 (Mo.App.1981); *Pillow,* 564 S.W.2d at 282; *see also* W. Prosser & W. Keeton, Prosser & Keeton on Torts 986–87 (5th ed. 1984). The party's interference is unjustified, however, when the contract does not threaten any harm to the party's pecuniary or reputational interests. *See Juengel,* 622 S.W.2d at 516.

Macomber's contracts did not threaten any interests of NVF and Sharon such as to justify their interference. Although Macomber was not making as much profit on its steel sales as Ohio Metal, Macomber's steel operations reflected some profit. Existing contracts, such as those between Macomber and Crowley, are entitled to great protection from interference. *Id.* at 516; *Downey v. United States Weather Proofing, Inc.*, 363 Mo. 852, 858, 253 S.W.2d 976, 980 (1953). We conclude that, under Missouri law, NVF and Sharon interfered with the Macomber-Crowley contracts for an improper purpose when they knowingly acted to the detriment of Macomber and their interests therein.[2]

**B. The Separability of the Corporations.**

NVF and Sharon contend that Crowley failed to introduce sufficient evidence to prove that NVF, Sharon, and Macomber

2. *City of Warrensburg, Missouri v. RCA Corp.,* 571 F.Supp. 743 (W.D.Mo.1983), cited by NVF and Sharon in support of their argument, is inapposite here. In *Warrensburg,* the City of Warrensburg sued RCA for preventing an RCA subsidiary from locating a manufacturing plant in Warrensburg's industrial park. RCA sought summary judgment and Warrensburg contended that a material fact existed as to whether RCA acted for its own, rather than its subsidiary's, interests. The district court disagreed, concluding "that the material issue under applicable Missouri law is not whether RCA acted in its own, as opposed to [its subsidiary's] interest, but rather whether RCA had a bona fide legal economic interest to protect in this case and whether it acted to protect that interest under the undisputed facts and circumstances of this case." *Id.* at 751.

Contrary to the contentions of NVF and Sharon, the rule of law cited by the *Warrensburg* court does not justify the interference by NVF and Sharon in the Macomber-Crowley contracts. Although NVF and Sharon undisputably had an economic interest in their subsidiary's contracts, they did not "act[ ] to protect that interest." Rather, they sacrificed their interest and Macomber to make more money through another Sharon subsidiary. Moreover, the rule in *Warrensburg* applies only to a parent's right to interfere with a *potential* contract between its subsidiary and another. As the district court

were separate entities such that NVF and Sharon could interfere with Macomber's contracts. We reject this argument. In the previous appeal of this case, we concluded that the three corporations were separable for the purposes of Crowley's interference action. *Phil Crowley*, 702 F.2d at 722. The Missouri Court of Appeals has since indicated that we applied the correct rule of law in reaching that holding. *See Community Title Co. v. Roosevelt Federal Savings & Loan Ass'n*, 670 S.W.2d 895, 905 n. 8 (Mo.App.1984) (quoting with approval the rule of law applied in previous appeal). NVF and Sharon cite no additional evidence justifying a contrary conclusion to that reached in the earlier appeal. Additionally, NVF and Sharon did not preserve the entity issue when moving for a directed verdict and for a judgment n.o.v.

Accordingly, we affirm the judgement of the district court.

noted, the parent holds a much narrower privilege to interfere with a subsidiary's *existing* contract. *Id.* at 750.