33 S.W.3d 779 (2000)
WASTE CONVERSION SYSTEMS, INC.
v.
GREENSTONE INDUSTRIES, INC., et al.
Supreme Court of Tennessee, at Nashville.
December 20, 2000.
*780 John Allen Lucas, Knoxville, TN, for the petitioners, Greenstone Industries, Inc. and Greenstone Industries-Atlanta, Inc.
Kelli Lynne Thompson and Steven G. Anderson, Knoxville, TN, for the respondent, Waste Conversion Systems, Inc.

OPINION
HOLDER, J., delivered the opinion of the court, in which ANDERSON, C.J., and DROWOTA, BIRCH, and BARKER, JJ., joined.
Pursuant to Rule 23 of the Rules of the Supreme Court of Tennessee,[1] this Court accepted certification of the following questions from the United States District Court for the Eastern District of Tennessee:
(1) Can a parent corporation be held liable under Tenn.Code Ann. § 47-50-109 or under Tennessee law for inducing a subsidiary to breach a contract with another party?
(2) Can a parent corporation be held liable for inducing its subsidiary to breach a contract when the parent was acting on behalf of the subsidiary or acting to further the subsidiary's interests? If so, which party bears the burden of pleading and proving whether the parent was acting on behalf of, or to further the interests of, the subsidiary?
(3) For a parent corporation to be held liable for inducing its subsidiary to breach a contract, must the parent induce the breach by wrongful means? If so, what constitutes wrongful means, and which party has the burden of pleading and proving existence of wrongful means?
We hold that a parent corporation has a privilege pursuant to which it can cause a wholly-owned subsidiary to breach a contract without becoming liable for tortiously interfering with a contractual relationship. This privilege, however, is not absolute and may be lost if the parent company acts contrary to the subsidiary's economic interests or if the parent corporation employs wrongful means in such situations. The burden of proof in both instances is on the plaintiff to prove the defendant parent corporation acted in such a way that its privilege was lost.
Waste Conversion Systems, Inc. ("WCS") alleges that it entered into a long-term contract to sell waste paper and similar fiber materials to Greenstone Industries-Atlanta, Inc. ("GSI-A"), the wholly-owned subsidiary of Greenstone Industries, Inc. ("GSI"). It also alleged that the contract specified that GSI-A would purchase a minimum quantity of fiber per month at a fixed price. Had the market price of fiber moved higher during the course of the contract, GSI-A would have benefitted by having a guaranteed source of supply at a low fixed price. However, the market price of fiber fell. It is WCS's contention that, without any legal justification whatsoever, GSI-A refused to accept *781 fiber from WCS so that GSI-A could purchase fiber on the open market at a lower price. The claim against GSI is that it willfully and maliciously induced GSI-A to breach this same contract.

ANALYSIS
The certified questions presented to this Court are ones of first impression. Our answers to these questions are limited to the relationship between a parent corporation and a wholly-owned subsidiary. The extent to which such answers would apply to situations in which a parent corporation owns less than 100 percent of the stock in a subsidiary is a question not presented in this case.

I
The first question certified to this Court is whether a parent corporation can be held liable for inducing a wholly-owned subsidiary to breach a contract. Courts from other jurisdictions hold that a parent corporation has a privilege pursuant to which it can cause a wholly-owned subsidiary corporation to breach a contract without becoming liable for inducement of breach of contract. However, the courts do not portray the privilege as an unqualified one, indicating that it can be lost in one of two ways. In T.P. Leasing Corp. v. Baker Leasing Corp., 293 Ark. 166, 732 S.W.2d 480 (1987), the Supreme Court of Arkansas provided an insightful description of the privilege:
We think the correct rule is that a parent corporation's privilege permits it to interfere with another's contractual relations when the contract threatens a present economic interest of its wholly owned subsidiary, absent clear evidence that the parent employed wrongful means or acted with an improper purpose.
Id. at 483.
Other jurisdictions have adopted similar rules. See Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc., 984 F.2d 1118 (11th Cir.1993) (applying Alabama law); Phil Crowley Steel Corp. v. Sharon Steel Corp., 782 F.2d 781, 783-85 (8th Cir.1986) (applying Missouri law; holding that a parent corporation may interfere with its subsidiary's contractual relations when the contract threatens a present, existing economic or reputational interest of the subsidiary); Green v. Interstate United Mgmt. Servs. Corp., 748 F.2d 827 (3d Cir.1984) (applying Pennsylvania law); James M. King & Assocs., Inc. v. G.D. Van Wagenen Co., 717 F.Supp. 667 (D.Minn.1989); Bendix Corp. v. Adams, 610 P.2d 24, 29 (Alaska 1980) ("[T]here is general agreement that a corporate shareholder. . . would have a sufficient economic interest in a subsidiary corporation to interfere in some of the subsidiary's business relationships."); Lachenmaier v. First Bank Sys., Inc., 246 Mont. 26, 803 P.2d 614 (1990); Holloway v. Skinner, 898 S.W.2d 793, 797 (Tex.1995) ("When there is a complete identity of interests [between the party to the contract and the alleged tortfeasor], there can be no interference as a matter of law."). Summarizing the law in this area, the Court of Appeals for the Second Circuit, in Boulevard Associates v. Sovereign Hotels, Inc., 72 F.3d 1029 (2d Cir.1995), stated that "[c]ourts in other states have uniformly found that a parent company does not engage in tortious conduct when it directs its wholly-owned subsidiary to breach a contract that is no longer in the subsidiary's economic interest to perform." Id. at 1036 (applying Connecticut law).
The reason for acknowledging the privilege of a parent corporation to interfere in its wholly-owned subsidiary's contractual relations is the usual identity of interests between the subsidiary and its parent. This relationship between the parent and the subsidiary corporation is illustrated in American Medical International, Inc. v. Giurintano, 821 S.W.2d 331 (Tex.Ct.App.1991), as follows:
[A] parent and a subsidiary are so closely aligned in business interests as *782 to render them, for tortious interference purposes, the same entity. The court thus ignored the fact that the two were separate entities and held that neither could tortiously interfere with the other because their financial interests were identical, since the parent controlled the subsidiary and its profits.
Id. at 336. This illustration corresponds to the analysis by the United States Supreme Court. In Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), the Court analyzed the relationship between a parent and subsidiary corporation:
A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder. . . . [I]n reality a parent and a wholly owned subsidiary always have a "unity of purpose or a common design." They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests.
467 U.S. at 771-72, 104 S.Ct. at 2741-42. Even though the Court provided this reasoning in the context of an antitrust case, we believe the underlying relationship between the two corporations would be no different in a tortious interference of contract case.
Courts in Tennessee have not addressed this issue directly, but, in an earlier case, we suggested the direction we are now taking. In Forrester v. Stockstill, 869 S.W.2d 328 (Tenn.1994), this Court dealt with the issue of whether an officer, director, or employee of a corporation could be held liable for wrongfully interfering with an at-will employee's employment relationship with such corporation. Id. at 330-31. In deciding that issue, we adopted principles analogous to the notion that a corporate parent usually has a unity of interest with its wholly-owned subsidiary. Id. at 334-35. In that case, we stated that the wrongful interference with the at-will employment by a third person is actionable only if that person stood as a third party to the employment relationship at the time. Id. at 331. Since a corporation can act only upon the advice of its officers and agents and since important societal interests are served by corporations receiving candid advice from these persons, we held that officers, directors, and employees were immune from claims of intentional interference with employment if they act within the general range of their authority and their actions were substantially motivated by an intent to further the interest of the corporation. Id. at 334-35. The case, in the end, was decided in favor of the officers because there was insufficient proof that the officers were not acting in furtherance of the corporation's interest. Id. at 335; see also Schlater v. Haynie, 833 S.W.2d 919, 927 (Tenn.Ct.App.1991). Forrester indicates that Tennessee has recognized a privilege against an interference of contract claim when there is unity of interest between the interfering party and the breaching party. Forrester also shows that the claim can be alleged successfully only when the interfering party is a third party not closely tied to the operations of the breaching corporation.

II
The second certified question calls upon us to decide whether a parent corporation can lose immunity for acting contrary to its wholly-owned subsidiary's interest and where the burden of proof should lie. Courts in other jurisdictions generally acknowledge that acting contrary *783 to the subsidiary's interest is one of the ways in which a corporate parent loses its privilege to interfere in its subsidiary's contractual relationship. In Phil Crowley Steel Corp., the Eighth Circuit held that the parent's privilege was lost because it "interfered with the [subsidiary's] contracts for an improper purpose when [it] knowingly acted to the detriment of [the subsidiary] and [its] interest[] therein." 782 F.2d at 784. The Second Circuit, in Boulevard Associates, stated that the privilege existed only when the parent directed "the wholly-owned subsidiary to breach a contract that is no longer in the subsidiary's economic interest to perform." 72 F.3d at 1036; see also James M. King & Assocs., 717 F.Supp. at 681 (defining the privilege as existing only when the parent acts to protect the subsidiary's economic interests); T.P. Leasing Corp., 732 S.W.2d at 483 (upholding the parent's immunity when the contract threatens the present economic interest of its wholly-owned subsidiary). We believe that the same rule should apply in Tennessee. A parent corporation acting contrary to its wholly-owned subsidiary's economic interests can be considered a third party to its subsidiary's contractual relationship and can be held liable for tortiously interfering with that relationship.
With respect to the question of who bears the burden of proof, it is a general principle in Tennessee that the burden rests on the party who affirms, not on the party who denies. In Donaldson v. Donaldson, 557 S.W.2d 60 (Tenn.1977), this Court noted that "[w]hile a complaint in a tort action need not contain in minute detail the facts that give rise to the claim, it either must contain `direct allegations on every material point necessary to sustain a recovery on any legal theory . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial.'" Id. at 61 (citations omitted). Following the same line of thought, the Court of Appeals commented that "[t]he burden of proof is on the party having the affirmative of the issue, and the burden of proof never shifts. The plaintiff had the burden of proving the elements of her theory of recovery and the facts which she alleged in her complaint." Winford v. Hawissee Apartment Complex, 812 S.W.2d 293, 295 (Tenn.Ct.App.1991).
In the case before us, the plaintiff, WCS, is the party attempting to recover from a parent corporation that was not a participant in the contract. The plaintiff is the party affirming the facts regarding the parent's interference with the contract as well as its unlawfulness in doing so. Therefore, once it is established that the subsidiary is wholly-owned by the defendant parent corporation (either as conceded in the plaintiff's complaint or as demonstrated by the defendant), the plaintiff should bear the burden of proof to show that the parent acted detrimentally to the subsidiary's economic interests. This fact should be demonstrated by the plaintiff in addition to the elements of the cause of action. The majority of our sister jurisdictions also place the burden on plaintiffs in this situation. See, e.g., Advent Sys. Ltd. v. Unisys Corp., 925 F.2d 670, 673 (3d Cir.1991) (applying Pennsylvania law); Phil Crowley Steel Corp., 782 F.2d at 783; American Med. Int'l, 821 S.W.2d at 337; Holloway v. Skinner, 898 S.W.2d 793, 796 (Tex.1995). But see Bendix Corp., 610 P.2d at 29 (Alaska 1980).

III
The third certified question asks us to decide whether the loss of the parent corporation's privilege can be caused by its use of wrongful means and what constitutes wrongful means. Cases from other jurisdictions indicate that a corporate parent loses its privilege to interfere in its wholly-owned subsidiary's contractual relations if it employs "wrongful means." The privilege can be lost even if the parent does not act contrary to the subsidiary's best interests. In Paglin v. Saztec International, Inc., 834 F.Supp. 1184 (W.D.Mo. *784 1993), the court stated that the privilege exists "so long as the parent does not employ wrongful means or interfere for an improper purpose." Id. at 1196 (emphasis added). The court in James M. King & Associates, stated that the privilege exists for a corporate parent "provided it does not use wrongful means and acts to protect [its subsidiary's] economic interests." 717 F.Supp. at 681 (emphasis added).
In defining the meaning of "wrongful means," the court in Paglin stated as follows:
In the context of interference with contractual relations, "wrongful means" is defined to include acts which are wrongful in and of themselves, such as "misrepresentations of facts, threats, violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or common law."
834 F.Supp. at 1196. The Second Circuit in Boulevard Associates also characterized the term in a narrow manner to include "fraud, misrepresentation, intimidation or molestation."[2] 72 F.3d at 1037. We find the holdings of both of these cases persuasive and believe that a broad definition encompassing both rules should apply in Tennessee. We also believe that the burden of pleading and proving that the defendant parent corporation acted with wrongful means in causing its wholly-owned subsidiary to breach a contract should be on the plaintiff, once it is established that the defendant corporation owns 100 percent of the stock of the subsidiary in question. Such a holding accords with the Tennessee principles discussed above regarding the burden of proof as well as with the majority view of our sister jurisdictions. See Advent Sys. Ltd., 925 F.2d at 673; Phil Crowley Steel Corp., 782 F.2d at 783; American Med. Int'l, 821 S.W.2d at 337; Holloway, 898 S.W.2d at 796. But see Bendix Corp., 610 P.2d at 29.

CONCLUSION
Based on the certified questions posed to this Court, we hold that a parent corporation is privileged to interfere in the contractual relations of a wholly-owned subsidiary and that it is immune from liability for inducing to breach a contract with another party. This privilege, however, can be lost either by acting contrary to such subsidiary's economic interests or by using wrongful means. For this purpose, the definition of wrongful means includes fraud, misrepresentation, threats, violence, defamation, trespass, restraint of trade, intimidation, molestation, or any other wrongful act recognized by statute or common law. Once it is established that the defendant corporation owns 100 percent of the stock of the subsidiary in question, the plaintiff bears the burden of proof to demonstrate that the defendant has lost its privilege by acting contrary to its wholly-owned subsidiary's economic interests or by employing wrongful means in inducing its wholly-owned subsidiary to breach a contract. The clerk will transmit a copy of this opinion in accordance with Tenn.Sup.Ct.R. 23(8). The costs in this Court will be taxed to the respondents, Waste Conversion Systems, Inc.
NOTES
[1] "The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn.Sup.Ct.R. 23
[2] The decision in Boulevard Associates indicates that the privilege can be lost upon the showing of malice. 72 F.3d at 1037. In Connecticut, unlike the case in Tennessee, malice is not part of the element for procurement of breach of contract. It would not be appropriate in Tennessee to permit the privilege to be lost merely upon a showing of malice because malice is part of the general cause of action and must be shown in all cases. Testerman v. Tragesser, 789 S.W.2d 553, 556-57 (Tenn.Ct.App.1989). If the parent corporation's privilege were lost upon a showing of malice, the privilege would be illusory.