**Renan C. PAGLIN, et al., Plaintiffs,**

v.

**SAZTEC INTERNATIONAL,
INC., et al., Defendants.**

No. 92–0350–CV–W–8.

United States District Court,
W.D. Missouri, W.D.

Sept. 17, 1993.

Neil L. Johnson, C.W. Crumpecker, Jr., Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, MO, for plaintiffs.

Lynne C. Kaiser, Rachel H. Baker, Seigfreid, Bingham, Levy, Selzer, & Gee, P.C., Kansas City, MO, for defendants.

### ORDER

STEVENS, Chief Judge.

This case is before the court on the motions of plaintiffs to dismiss voluntarily counts V (42 U.S.C. § 1981), VI (Title VII), and VII (42 U.S.C. § 1981) without prejudice, and on the motions of the defendants for summary judgment. For the reasons set forth below, plaintiffs' motion for a voluntary dismissal is denied in favor of granting plaintiffs leave to amend their pleadings, and the defendants' motions for summary judgment are denied.

### I. Factual Summary

The essential facts of this case are as follows:

Plaintiff Renan Paglin ("Paglin") was the developer, principal shareholder, and president of Global Office Technologies ("GOT"), a medical transcription service. In 1990, Paglin and defendants Robert Dunne ("Dunne"), Gary Abernathy ("Abernathy"), and Richard Thompson ("Thompson") began negotiating an agreement for the sale of GOT to defendant Saztec International, Inc. ("Saztec"). Paglin alleges that, during these negotiations, defendants Dunne, Abernathy, and Thompson represented to Paglin that he would have the same authority to manage the GOT business after its sale to Saztec as he had prior to the sale.

On July 12, 1991, Paglin, GOT, and defendant Chartnet, Inc. ("Chartnet")—a newly formed Saztec subsidiary—entered into an Asset Purchase Agreement. See Def. Chartnet's Mot. Summ. J. Counts II, V, & VII Ex. D ("Asset Purchase Agreement"). Pursuant to this agreement, Chartnet purchased GOT's assets in exchange for, among other things, the execution of an Employment Agreement between Chartnet and Paglin. See id. Ex. E ("Employment Agreement"). The Employment Agreement provides that Paglin will remain as executive director, and perform the duties of executive director, for two years. Id. ¶ 2. The Employment Agreement also provides that Paglin "will be initially reporting to Donald E. Mack, Senior Vice President of SAZTEC International, Inc." Id. Defendants Dunne, Abernathy, and Thompson are officers and/or directors of both Saztec and Chartnet.

Plaintiffs allege that, shortly after the sale of GOT to Chartnet, defendant Donald Mack ("Mack") began "forcibly taking over the duties of Executive Director" at Chartnet, and that defendants Dunne, Abernathy, and Thompson "engaged in a pattern of harassment and disparaging and oppressive conduct" toward Paglin. First Am. Compl. ¶¶ 21–22. Paglin repeatedly requested a job description, which the defendants refused to

provide. On September 19, 1991, defendant Thompson instructed Chartnet employees that Mack was in complete charge of Chartnet, and in a letter dated November 27, 1991, Thompson formally terminated the Employment Agreement between Chartnet and Paglin.

As a result of the foregoing events, Paglin and GOT filed the instant action against Saztec, Chartnet, Dunne, Abernathy, Thompson, and Mack, alleging claims for breach of the Employment Agreement and Asset Purchase Agreement (counts I and II), fraud (count III), tortious interference with a contract (Count IV), racial discrimination (counts V, VI, and VII), and breach of a fiduciary duty (count VIII).

Defendants filed motions for summary judgment on all eight counts. Plaintiffs have filed a motion to dismiss counts V, VI, and VII voluntarily without prejudice.

## II. *Plaintiffs' Motion to Dismiss*

Plaintiffs seek to dismiss voluntarily without prejudice the race discrimination claims plead in counts V, VI, and VII of their first amended complaint. Defendants seek to have those claims dismissed with prejudice.

■ First, the court rejects defendants' suggestion that counts V, VI, and VII should be dismissed with prejudice. Fed.R.Civ.P. 41(b) authorizes the involuntary dismissal of an action or claim when a plaintiff fails to prosecute or comply with the Federal Rules of Civil Procedure or an order of the court. None of these circumstances is present in the instant case.

Accordingly, defendants' request that the court dismiss counts V, VI, and VII with prejudice is rejected.

■ Second, plaintiffs' motion to dismiss voluntarily counts V, VI, and VII of their first amended complaint without prejudice is denied. Fed.R.Civ.P. 41(a)(2) governs the type of dismissal plaintiffs evidently seek. However, Rule 41(a)(2) refers to dismissal of "an action," as opposed to an individual claim or claims. The language of Rules 41(a)(1), 41(b), and 41(d) refer to both actions and claims, indicating that the drafters of Rule 41 drew a distinction between those two terms

and intended them to have different meanings. *See* Fed.R.Civ.P. 41(a)(1) (referring to "an action based on or including the same claim"); *id.* 41(b) (authorizing involuntary dismissal of "an action or any claim"); *id.* 41(d) (referring to "an action based on or including the same claim").

■ Thus, while the Eighth Circuit apparently has not yet addressed the question, the court concludes that Fed.R.Civ.P. 41(a) authorizes a plaintiff to dismiss voluntarily an "action," but does not apply when a plaintiff seeks to dismiss some, but not all, of his or her claims. Instead, a motion to eliminate individual claims from a multicount complaint should be treated as a motion to amend the pleadings brought pursuant to Fed.R.Civ.P. 15(a). A number of cases have taken this approach, and the court adopts the reasoning and rule of those decisions. *See Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir.1988); *Gronholz v. Sears, Roebuck & Co.*, 836 F.2d 515, 517–18 (Fed.Cir. 1987); *Management Investors v. United Mine Workers*, 610 F.2d 384, 394 & n. 22 (6th Cir.1979); *United States v. Outboard Marine Corp.*, 104 F.R.D. 405, 414 (N.D.Ill.1984), *aff'd*, 789 F.2d 497 (7th Cir.), *cert. denied*, 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986); *C. Van Der Lely N.V. v. F.lli Maschio S.n.c.*, 561 F.Supp. 16, 19–20 (S.D.Ohio 1982), *aff'd*, 748 F.2d 1568 (Fed.Cir.1984); *Smith, Kline & French Labs. v. A.H. Robins Co.*, 61 F.R.D. 24, 27–31 (E.D.Pa.1973); *see also Exxon Corp. v. Maryland Casualty Co.*, 599 F.2d 659, 662 n. 10 (5th Cir.1979).

Accordingly, plaintiffs' motion to dismiss voluntarily counts V, VI, and VII without prejudice is denied, and the court instead will treat plaintiffs' filing as a motion to amend the pleadings.

■ Fed.R.Civ.P. 15(a) declares that leave to amend "shall be freely given when justice so requires," and establishes a liberal amendment policy. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Buder v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir.1981); *see also* 6 Charles A. Wright et al., Federal Practice & Procedure § 1488 (1990). Thus, while leave to amend is not to

be granted automatically, *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir.1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 483 (1988), a court ordinarily will grant a party's motion under Rule 15(a) absent "undue delay, bad faith or dilatory motive on the part of the movant ... [or] undue prejudice to the opposing party." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230.

■■■ In the instant case, the court finds that plaintiffs should be granted leave to amend their first amended complaint to eliminate the race discrimination claims currently plead in counts V, VI, and VII. Plaintiffs certainly should have withdrawn their race discrimination claims at an earlier stage in these proceedings, and their tardiness undoubtedly has required the defendants to conduct unnecessary discovery.

Nevertheless, allowing plaintiffs to withdraw their discrimination claims at this time will simplify and focus the issues presented by this case, remove a difficult and sometimes emotional subject from the trial, and expedite the presentation of evidence. In addition, granting plaintiffs leave to amend will spare the defendants the effort and expense of preparing and presenting their defense to counts V, VI, and VII, and eliminate the risk of an unfavorable judgment. These considerations negate any claims of undue prejudice by the defendants.

Accordingly, pursuant to Fed.R.Civ.P. 15(a), the court grants plaintiffs leave to amend their first amended complaint to eliminate counts V, VI, and VII from their current pleadings.[1] Plaintiffs shall file their amended complaint within ten days from the date of this order.

### III. Defendants' Motions for Summary Judgment

Defendants have filed motions for summary judgment on all eight counts of plaintiffs' first amended complaint. In view of the fact that plaintiffs' amended pleadings will omit the claims for race discrimination currently plead in counts V, VI, and VII, the court need only consider the defendants' motions for summary judgment on counts I, II, III, IV, and VIII. For the reasons set forth below, the defendants' motions for summary judgment on these counts are denied.

### A. The Summary Judgment Standard[2]

■■■ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmovant. *Raschick v. Prudent Supply, Inc.*, 830 F.2d 1497, 1499 (8th Cir.1987), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988). The party seeking summary judgment bears the initial burden of demonstrating that an essential element of the nonmoving party's case is lacking. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to come forward with sufficient evidence to show that there is a genuine factual controversy as to that issue. *Id.; see also* Fed.R.Civ.P. 56(e). To establish the existence of a genuine issue of fact for trial, the

---

1. In Section IV of this order, plaintiffs also are granted leave to amend their pleadings with respect to their claims for breach of a fiduciary duty.

2. At the outset, the court rejects defendants' contention that the facts set forth in support of their motions for summary judgment must be deemed admitted under Local Rule 13(G). Defendants' suggestions in support of their motions each contain factual statements that consume as many as fifteen pages, violating Local Rule 13(G)'s requirement that factual statements made in support of a motion for summary judgment be "con-

cise." As a practical matter, responding to each of the defendants' prolix factual statements individually would have been impossible within the twelve-day time period prescribed by Local Rule 13(C). Thus, it is understandable that plaintiffs chose to submit a single, fifteen-page factual statement in support of their suggestions in opposition to the defendants' motions. More importantly, plaintiffs' factual statement successfully controverts the material facts set forth in the numbered paragraphs of defendants' factual statements, and demonstrates the existence of genuine issues of material fact for trial.

nonmoving party must produce evidence that would allow a reasonable fact finder to resolve that issue in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to so respond, summary judgment, if appropriate, shall be entered against that party. *Id.*

Applying the foregoing standards to the instant case, the court finds that genuine issues of material fact exist with respect to plaintiffs' claims. Thus, for the reasons set forth below, the defendants' motions for summary judgment are denied.

### B. Counts I and II

Defendant Saztec has filed a motion for summary judgment on counts I and II of plaintiffs' first amended complaint.

Counts I and II allege claims for breach of the Asset Purchase Agreement and Employment Agreement. Plaintiffs' theory is that Chartnet's alleged breach of those contracts should be imputed to Saztec because Saztec is Chartnet's alter ego.

■ Missouri has developed a three-part test for determining whether alter ego liability should be imposed: (1) The defendant must have completely dominated and controlled the finances, policy, and business practices of the corporation with respect to the transaction in dispute; (2) The defendant must have used its control of the corporate entity for an improper purpose; and (3) The defendant's control of the corporate entity must have caused the plaintiff's injury. *Collet v. American Nat'l Stores, Inc.,* 708 S.W.2d 273, 284 (Mo.Ct.App.1986); *C.C. Dillon Co. v. Robinson,* 636 S.W.2d 380, 383 (Mo.Ct.App.1982); *see also Northern Illinois Gas Co. v. Total Energy Leasing Corp.,* 502 F.Supp. 412, 416–17 (N.D.Ill.1980).

In the instant case, defendant Saztec contends it is entitled to summary judgment because plaintiffs have not produced any evidence demonstrating either that Saztec controlled Chartnet or that Saztec used Chartnet for an unlawful purpose.

### 1. Control

Defendant Saztec first argues that it is not subject to alter ego liability on counts I and II because there is no evidence that it controlled Chartnet.

■ Missouri has adopted an eleven-factor balancing test to determine whether a defendant controls a corporation for purposes of alter ego liability. *See Collet,* 708 S.W.2d at 284. Specifically, depending on the circumstances, any combination of the following factors could lead to the conclusion that a defendant parent corporation "controls" a subsidiary corporation:

(1) The parent corporation owns all or most of the capital stock of the subsidiary;

(2) The parent and subsidiary corporation have common directors or officers;

(3) The parent corporation finances the subsidiary;

(4) The parent corporation subscribes to all of the capital stock of the subsidiary or otherwise causes its incorporation;

(5) The subsidiary has grossly inadequate capital;

(6) The parent corporation pays the salaries and other expenses or losses of the subsidiary;

(7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

(8) In the papers of the parent corporation or the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;

(9) The parent corporation uses the property of the subsidiary as its own;

(10) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation and the latter's interest;

(11) The formal legal requirements of the subsidiary are not observed.

*Id.*

 In the instant case, it is undisputed that Saztec owns 80% of the stock of Chartnet. It also is undisputed that defendants Dunne, Abernathy, and Thompson are officers and/or directors of both Saztec and Chartnet, and constitute a majority of Chartnet's five-member board of directors. In addition, there is evidence that Saztec funded Chartnet when Chartnet did not have sufficient funds, and that Saztec (as well as Paglin) was instrumental in instigating Chartnet's incorporation.

As the foregoing discussion illustrates, plaintiffs have presented evidence on four of the eleven factors listed above. Based on this evidence, the court rejects Saztec's contention that there is no evidence that Saztec controlled Chartnet, and finds that there is a genuine issue of material fact with respect to the extent of Saztec's control over Chartnet.

### 2. Unlawful Purpose

Defendant Saztec next argues that it is not subject to alter ego liability on counts I and II because there is no evidence that it exercised its alleged control over Chartnet for an improper purpose.

This argument is unmeritorious. Plaintiffs claim that Paglin's termination constituted a breach of the Asset Purchase Agreement and the Employment Agreement. It is undisputed that Saztec instigated Chartnet's incorporation for the purpose of purchasing GOT through the Asset Purchase Agreement and Employment Agreement. It also is undisputed that Saztec directors and officers, particularly defendants Thompson and Mack, were closely involved in the events that led to the termination of Paglin's employment. For instance, there is evidence that defendant Mack (a Saztec officer) clashed with Paglin over control of Chartnet almost immediately after the acquisition. There also is evidence that Paglin's conflict with Mack eventually led defendant Thompson to instruct Chartnet employees that Mack was in complete charge of the company, and that Thompson ultimate-

ly terminated the Employment Agreement between Chartnet and Paglin.

This evidence supports plaintiffs' theory that Saztec used Chartnet as a vehicle for acquiring GOT and eliminating Paglin from the GOT/Chartnet operation, allegedly in breach of the Asset Purchase Agreement and Employment Agreement. Thus, the court finds that a factual controversy surrounds the issue of whether Saztec exercised control over Chartnet for an unlawful purpose.

Accordingly, defendant Saztec's motion for summary judgment on counts I and II of plaintiffs' first amended complaint is denied.

### C. Count II

Defendant Chartnet has filed a motion for summary judgment on count II of plaintiffs' first amended complaint.

Count II alleges a claim for breach of the Asset Purchase Agreement. Specifically, plaintiffs claim that the terms of the Employment Agreement were incorporated into the Asset Purchase Agreement. Therefore, plaintiffs contend, Chartnet's alleged breach of the Employment Agreement constituted a breach of the Asset Purchase Agreement.

Chartnet contends that the Employment Agreement was not incorporated into the Asset Purchase Agreement, and that the two documents memorialize separate contracts. On its face, the Asset Purchase Agreement requires only that Chartnet and Paglin execute the Employment Agreement as a condition of closing. *See* Asset Purchase Agreement ¶ 13(a); *see also id.* ¶¶ 13(c), 18. Chartnet asserts that because it indisputably performed this requirement, it did not breach the Asset Purchase Agreement, and therefore is entitled to summary judgment on count II.

 Whether multiple writings constitute a single contract is determined largely by the parties' intent, as revealed by the instrument or instruments and the relevant external circumstances. *E.g., Missouri Sav. Ass'n v. Home Sav. of Am.,* 862 F.2d 1323, 1326 (8th Cir.1988) (citing *Missouri Farmers Ass'n, Inc. v. Barry,* 710 S.W.2d 923, 926 (Mo.Ct.App.1986)). Missouri law expressly allows several documents to be read together

as a single contract if they are executed at the same time and relate to the same transaction. *Id.* (citing *Merz v. First Nat'l Bank of Franklin County,* 682 S.W.2d 500, 502 (Mo.Ct.App.1984)).

In the instant case, neither the Asset Purchase Agreement nor the Employment Agreement incorporate the other document by reference or recite an intention that the two agreements be treated as a single contract. Thus, the provisions of the writings themselves do not suggest that the Asset Purchase Agreement and Employment Agreement were intended to constitute a single contract.

Nevertheless, the record of the negotiations that led to the execution of the Asset Purchase Agreement suggest that the parties intended the two documents to constitute a single agreement. For instance, it is clear that continued control over GOT's operations was a key consideration to Paglin during his negotiations with Saztec. In addition, an April 17, 1991 letter of intent expressly states that Paglin's continued employment under terms set forth in an employment agreement would be part of Saztec's acquisition of GOT, *see* Fact Materials Supp. Pls.' Sugg. Opp'n Defs.' Mots. Summ. J. Ex. 17, and the Asset Purchase Agreement and Employment Agreement were attached to one another at the time of closing.

Thus, the court finds that there is a genuine issue of material fact with respect to whether the Asset Purchase Agreement incorporated the terms of the Employment Agreement. The issue of the parties' intent with respect to the relationship between the Asset Purchase Agreement and Employment Agreement must be resolved at trial. Accordingly, the motion of Chartnet for summary judgment on count II of plaintiffs' first amended complaint is denied.

#### D. Count III

Defendants Chartnet, Saztec, Dunne, Thompson, and Abernathy have filed a motion for summary judgment on count III of plaintiffs' first amended complaint, which alleges a claim for fraud.

To establish a claim for fraud under Missouri law, a plaintiff must show: (1) a representation by the defendant; (2) that the representation was false; (3) that the representation was material; (4) that the defendant knew the representation was false or was ignorant of its truth; (5) that the defendant intended that the plaintiff would act upon the representation in a manner reasonably contemplated by the defendant; (6) that the plaintiff was ignorant of the representation's falsity and relied upon its truth; (7) that the plaintiff had a right to rely upon the representation; and (8) that the plaintiff was injured as a result. *Schimmer v. H.W. Freeman Constr. Co.,* 607 S.W.2d 767, 769 (Mo.Ct.App.1980) (citing *O'Shaughnessy v. Ward Aircraft Sales & Serv., Inc.,* 552 S.W.2d 730, 733 (Mo.Ct.App. 1977)). In addition, when the purported fraud is a misrepresentation as to an act to be performed in the future, the plaintiff must show that the defendant made the misrepresentation with the present intent not to perform. *E.g., Craft v. Metromedia, Inc.,* 766 F.2d 1205, 1218–19 (8th Cir.1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986)).

In support of their motions for summary judgment, the defendants isolate and analyze six statements identified as significant to plaintiffs' fraud claim, discussing how plaintiffs have failed to produce evidence on one or more of the elements of fraud with respect to each individual statement.

Defendants analysis and argument is admirably thorough, and there may come a time when scrutinizing each individual allegedly fraudulent representation is necessary. However, the court also recognizes that fraud may be established by circumstantial evidence, *id.* at 1218, that an actionable fraudulent "representation" may be inferred from the circumstances surrounding the transaction, *Maples v. Charles Burt Realtor, Inc.,* 690 S.W.2d 202, 209 (Mo.Ct.App.1985), and that a claim for fraud may arise from the intentional creation of a false impression, *Wion v. Carl I. Brown & Co.,* 808 S.W.2d 950, 954–55 (Mo.Ct.App.1991). The court also recognizes that questions of intent often

present witness credibility issues that lie within the peculiar province of the jury.

 In essence, count III alleges that the defendants falsely represented to Paglin and GOT that Paglin "would be retained and allowed to function with the same authority that he had when the company [GOT] was independently owned." First Am. Compl. ¶ 38. To support this allegation, plaintiffs have presented evidence showing that Paglin and GOT were keenly interested in having Paglin continue to manage GOT after GOT's acquisition by Chartnet. In addition, the Employment Agreement between Paglin and Chartnet states: "2. *Duties.* Employee [Paglin] will perform all the usual duties of Executive Director, including, but not limited to, the duties currently performed, and other duties that may be assigned from time to time." Employment Agreement ¶ 2. There also is evidence that defendants Dunne, Abernathy, and Thompson represented to Paglin that Saztec had a history of acquiring companies and retaining top management, and that Paglin's postacquisition position at Chartnet would be comparable to the position of vice president and general manager at another Saztec subsidiary (Advanced Automation Associates).

Juxtaposed against the foregoing representations is evidence that the defendants did not have a favorable impression of Paglin at the time of the negotiations; that the defendants discussed among themselves that defendant Mack would "fit in nicely" at Chartnet; and that Mack's duties at Saztec were being divided up among other Saztec workers as early as one month before Chartnet's acquisition of GOT. In addition, the evidence shows that conflicts arose between Mack, Thompson, and Paglin almost immediately after the July 12, 1991 acquisition; that defendant Thompson instructed Mack to take complete charge of Chartnet in September 1991, just two months after the sale; and that defendant Thompson formally terminated the Employment Agreement just four months after the sale, in a November 27, 1991 letter.

Viewed in its totality and in the light most favorable to the plaintiffs, the court finds that the evidence set forth above would allow a reasonable fact finder to conclude that the defendants made intentional false misrepresentations as to the authority that plaintiff Paglin would have at Chartnet in order to induce plaintiffs to sell GOT; that the plaintiffs justifiably relied upon the defendants' representations; and that, at the time the representations were made, the defendants had no intention of allowing Paglin to occupy a position of authority at Chartnet, but planned to replace him with defendant Mack. Therefore, the court finds that genuine issues of fact surround the various elements of plaintiffs' fraud claim.

Accordingly, the motion of defendants Chartnet, Saztec, Dunne, Thompson, and Abernathy for summary judgment on count III is denied.

### E. Count IV

Defendants Saztec, Chartnet, Thompson, and Mack have filed a motion for summary judgment on count IV of plaintiffs' first amended complaint. Count IV alleges that the defendants tortiously induced, and conspired to induce, the breach of the Asset Purchase Agreement and Employment Agreement plead in counts I and II.

 The elements of a claim for tortious interference with a contract are: (1) a contract or valid business expectancy; (2) knowledge by the defendant of the contract or relationship; (3) intentional interference by the defendant which induces the breach of contract or relationship; (4) the absence of justification; and (5) resulting damage. *Francisco v. Kansas City Star Co.,* 629 S.W.2d 524, 529 (Mo.Ct.App.1981).

The defendants' motions for summary judgment are considered individually, below.

#### 1. Defendant Chartnet

 Defendant Chartnet argues that it is entitled to summary judgment because it was a party to both the Asset Purchase Agreement and the Employment Agreement, and Missouri law holds that a party cannot be held liable for tortiously inducing the breach of its own contract. *Franklin v. Harris,* 762 S.W.2d 847, 849 (Mo.Ct.App.1989). In oppo-

sition, plaintiffs contend that Chartnet is liable for tortious interference because Chartnet conspired with the other defendants to induce a breach of the Asset Purchase Agreement and Employment Agreement, and Missouri law imposes liability on contracting parties who conspire with third parties to breach a contract. *Cheatham's Furniture Co. v. La–Z–Boy Chair Co.*, 728 F.Supp. 569, 573 (E.D.Mo.1989), *aff'd*, 923 F.2d 858 (8th Cir.1990); *Lick Creek Sewer Systems, Inc. v. Bank of Bourbon*, 747 S.W.2d 317, 323 (Mo.Ct.App.1988). Defendant Chartnet asserts that plaintiffs have failed to produce any evidence that Chartnet engaged in a civil conspiracy with other defendants to breach the Asset Purchase Agreement and Employment Agreement.

■ Under Missouri law, the elements of a civil conspiracy include: the involvement of two or more persons; an unlawful object to be accomplished; an agreement or "meeting of the minds" on the object or course of action; at least one proximate act committed in furtherance of the conspiracy; and damages. *E.g., State Farm Mut. Auto. Ins. Co. v. Weber*, 767 S.W.2d 336, 338 (Mo.Ct.App. 1989).

In the instant case, it is undisputed that defendants Dunne, Abernathy, and Thompson are officers and/or directors of both Saztec and Chartnet, and that defendant Mack was an officer of Saztec. As the court noted in Section III.D of this order, there is evidence that would allow a reasonable fact finder to conclude that defendants Saztec, Dunne, Abernathy, and Thompson engaged in a scheme to make false representations to plaintiffs to induce them to enter into the Asset Purchase Agreement, but intended to replace Paglin with defendant Mack after Chartnet acquired GOT. Viewed in its totality and in the light most favorable to the plaintiffs, this evidence also would allow a reasonable fact finder to conclude that Chartnet (through defendants Dunne, Abernathy, and Thompson) entered into a scheme or agreement with defendants Saztec, Thompson, and Mack to induce Chartnet to breach its contracts with plaintiffs. Therefore, the court finds that there is a genuine issue of material fact as to whether defendant Chartnet is liable for tortious interference.

Accordingly, defendant Chartnet's motion for summary judgment on count IV of plaintiffs' first amended complaint is denied.

### 2. Defendant Saztec

■ Defendant Saztec also has filed a motion for summary judgment on plaintiffs' tortious interference claim. Saztec contends that it cannot be held liable for tortious interference because, as an 80% shareholder of Chartnet, Saztec's alleged interference with the Asset Purchase Agreement and Employment Agreement was justified. *See Phil Crowley Steel Corp. v. Sharon Steel Corp.*, 782 F.2d 781, 783, 785 (8th Cir.1986) (stating that a party may justifiably interfere with another party's contract to protect a financial interest); *see also City of Warrensburg, Mo. v. RCA Corp.*, 571 F.Supp. 743, 749–51 (W.D.Mo.1983); *Juengel Constr. Co. v. Mt. Etna, Inc.*, 622 S.W.2d 510, 515–16 (Mo.Ct. App.1981). In particular, Saztec argues that it was justified in allegedly inducing Chartnet to breach its contract(s) with Paglin because Paglin's alleged refusal to help develop new clients after Chartnet lost a major customer threatened Saztec's economic interest in Chartnet.

Plaintiffs contend that, under Missouri law, a controlling shareholder may induce the corporation to breach a contract only if "no improper means are used, [and] the defendant acts in good faith to protect the corporation and does not act for his own personal benefit." *Dependahl v. Falstaff Brewing Corp.*, 491 F.Supp. 1188 (E.D.Mo.1980), *aff'd in part, rev'd in part*, 653 F.2d 1208 (8th Cir.), *cert. denied*, 454 U.S. 968, 1084, 102 S.Ct. 512, 641, 70 L.Ed.2d 384, 619 (1981); *see also Nola v. Merollis Chevrolet Kansas City, Inc.*, 537 S.W.2d 627, 634 (Mo.Ct.App. 1976).

■ The court rejects plaintiffs' contention that a controlling shareholder may not induce a breach of a corporate contract for his or her own personal benefit. Instead, this court and the Eighth Circuit have expressly read Missouri law to allow a parent corporation to protect its economic interests

(*i.e.*, act for its own benefit) by interfering with its subsidiary's contractual relations so long as the parent does not employ "wrongful means" or interfere for an "improper purpose." *Phil Crowley Steel Corp.*, 782 F.2d at 783; *City of Warrensburg*, 571 F.Supp. at 749; *see also Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 796 S.W.2d 369, 372–73 (Mo. banc 1990) ("[P]rotecting one's own economic interest is not an improper motive.").

In the instant case, Saztec contends it is entitled to summary judgment because there is no evidence that it employed "wrongful means" to allegedly interfere with the contract between Chartnet and Paglin. In the context of interference with contractual relations, "wrongful means" is defined to include acts which are wrongful in and of themselves, such as "misrepresentation of fact, threats, violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or common law." *Community Title*, 796 S.W.2d at 373; *see also Meyer v. Enoch*, 807 S.W.2d 156, 159–60 (Mo.Ct.App. 1991).

In the instant case, the court finds that plaintiffs have failed to identify any evidence indicating that Saztec interfered with plaintiffs' contracts by employing wrongful means (*i.e.*, acts that are wrongful in and of themselves). *See* Pls.' Sugg. Opp'n Defs.' Mot. Summary J. Count IV at 4–5. For instance, plaintiffs contend there is evidence that Paglin and the defendants engaged in "numerous difficult and sometimes harsh conversations, confrontations, and arguments" after Chartnet acquired GOT. *Id.* However, there is no evidence that the defendants' statements during these postacquisition encounters were defamatory or otherwise actionable under Missouri law. Thus, the court finds that plaintiffs' evidence is legally insufficient to demonstrate that Saztec employed wrongful means in allegedly interfering with plaintiffs' contracts. *See Community Title*, 796 S.W.2d at 373 (stating that the term "wrongful means" encompasses acts which are "independently wrongful").

However, as the court noted in Section III.D of this order, there is evidence that would allow a reasonable fact finder to conclude that Saztec participated in a scheme to fraudulently induce plaintiffs to sell GOT and to wrest control of GOT from Paglin. This evidence of fraud also would allow a reasonable fact finder to conclude that Saztec acted for an "improper purpose" (*i.e.*, to consummate a fraud) when it allegedly induced Chartnet to breach the Asset Purchase Agreement and Employment Agreement. Therefore, the court finds that whether Saztec's alleged tortious interference with plaintiffs' contracts with Chartnet was justified constitutes a genuine issue of material fact for trial. *See Phil Crowley Steel Corp.*, 782 F.2d at 783 (stating that a parent corporation's interference with its subsidiary's contractual relations is not justified if the parent acts for an "improper purpose"); *City of Warrensburg*, 571 F.Supp. at 749.

Accordingly, the motion of defendant Saztec for summary judgment on count IV of plaintiffs' first amended complaint is denied.

### 3. Defendant Thompson

 Defendant Thompson has filed a motion for summary judgment on plaintiffs' tortious interference claim. Under Missouri law, a corporate officer, acting within his or her authority, may induce a breach of a corporate contract provided that he or she does not employ improper means and does not act out of self-interest. *Meyer*, 807 S.W.2d at 159. Defendant Thompson contends that he is entitled to summary judgment on count IV of plaintiffs' first amended complaint because there is no evidence that he used "improper means" to allegedly induce the breach of the Asset Purchase Agreement or Employment Agreement or that his alleged actions were motivated by self-interest.

In the instant case, the court finds that plaintiffs have failed to identify any evidence indicating that Thompson used improper means (*i.e.*, acts that are wrongful in and of themselves) to induce Chartnet to breach its contract(s) with Paglin. *See* Pls.' Sugg. Opp'n Defs.' Mot. Summary J. Count IV at 6–7. For instance, there is no evidence that defendant Thompson induced Chartnet to allegedly breach its contract(s) with Paglin through misrepresentation, threats, violence,

defamation, or any other act recognized as wrongful by Missouri law. *See Community Title,* 796 S.W.2d at 373; *see also Meyer,* 807 S.W.2d at 159–60.

The court further finds that plaintiffs have failed to identify any evidence indicating that Thompson's alleged actions were motivated by self-interest. Plaintiffs argue that defendant Thompson and Mack were friends and that Thompson may have derived a "personal benefit" by replacing Paglin with Mack at Chartnet because Mack's position at Saztec was going to be eliminated. The court rejects this argument. Absent remuneration or the promise of some other economic advantage, simply arranging employment for an acquaintance or friend is not an act of "self-interest."

 Nevertheless, defendant Thompson's motion for summary judgment on count IV must be denied. Under Missouri law, corporate officers may be held individually liable for tortious corporate conduct if they have actual or constructive knowledge of, and participated in, an actionable wrong. *Boyd v. Wimes,* 664 S.W.2d 596, 598 (Mo.Ct.App. 1984); *Osterberger v. Hites Constr. Co.,* 599 S.W.2d 221, 229 (Mo.Ct.App.1980).

In Sections III.E.1 and III.E.2 of this order, the court found that whether Chartnet and Saztec are liable for tortiously interfering with the Asset Purchase Agreement and Employment Agreement constitute genuine issues of fact for trial. Defendant Thompson is an officer of both corporations. There is evidence that conflicts arose between Mack, Thompson, and Paglin almost immediately after Chartnet's July 12, 1991 acquisition of GOT; that defendant Thompson instructed Mack to take complete charge of Chartnet in September 1991; and that Thompson formally terminated Paglin just four months after the sale, in a letter dated November 27, 1991. The court finds that this evidence would allow a reasonable fact finder to conclude that defendant Thompson had knowledge of and participated in any tortious interference committed by Saztec and/or Chartnet.

Accordingly, the motion of defendant Thompson for summary judgment on count IV of plaintiffs' first amended complaint is denied.

### 4. Defendant Mack

 Defendant Mack advances three arguments in support of his motion for summary judgment on plaintiffs' tortious interference claim. First, Mack contends that, because he received no increased salary or benefits during his employment with Saztec, plaintiffs have failed to produce any evidence that Mack received a "personal benefit" from Paglin's termination. *See Meyer,* 807 S.W.2d at 159 (stating that a corporate officer is privileged to induce a breach of a corporate contract unless he or she acts out of self-interest).

The court rejects this argument. There is evidence that Mack and Paglin engaged in a series of confrontations over management issues almost immediately after Chartnet acquired GOT, and that Mack and Paglin were struggling over on-site control of Chartnet. Thus, Paglin's removal from Chartnet would have personally benefitted defendant Mack by enhancing his position and influence at Chartnet. Thus, defendant Mack's contention that there is no evidence that he derived a "personal benefit" from Paglin's termination is without merit.

Defendant Mack next argues that he is entitled to summary judgment because, as Paglin's supervisor, Mack's alleged actions were privileged unless plaintiffs demonstrate that Mack was motivated by "malice" rather than by a desire to perform his supervisory duties. *See Franklin,* 762 S.W.2d at 849 (holding that the supervisor of a school principal could not be held liable for tortious interference unless the supervisor was "motivated by malice and not by a desire to act in his supervisory capacity"). Mack contends that plaintiffs have failed to come forward with any evidence that he acted with malice.

The court disagrees. The term "malice" is defined as "the intentional doing of a harmful act without justification or excuse," and does not necessarily include actual malice (*i.e.,* ill will). *Pillow v. General Am. Life Ins. Co.,* 564 S.W.2d 276, 281 (Mo.Ct.App.1978); *see also Tri–Continental Leasing Co. v. Neidhardt,* 540 S.W.2d 210, 215 (Mo.Ct.App.1976) (defining "maliciously" in the tortious inter-

ference context as inducing a breach of contract "with knowledge of the contract and without justifiable cause") (quoting *Downey v. United Weatherproofing, Inc.*, 363 Mo. 852, 253 S.W.2d 976, 981 (1953)). As noted above, there is evidence that defendant Mack's alleged actions were motivated by a self-interested desire to enhance his own position at Chartnet by having Paglin removed from the organization. The court finds that this same evidence would allow a reasonable fact finder to conclude that defendant Mack's alleged actions were done with malice, that is, that they were not justified. Thus, whether defendant Mack acted with "malice" constitutes a genuine issue of fact for trial.

█ Finally, defendant Mack argues that he is entitled to summary judgment because there is no evidence that he caused the alleged breach of the contracts. Missouri law dictates a two-step, "but-for" causation test in tortious interference cases. *See Tri–Continental*, 540 S.W.2d at 216–17 (setting forth the two-step approach); *see also Mueller v. Abdnor*, 972 F.2d 931, 938 (8th Cir.1992) (relying on *Tri–Continental Leasing Co.*).[3] Under this test, the court must first determine whether the defendant "actively and affirmatively [took] steps to induce the breach," and, if so, the court must decide whether the contract would have been performed even in the absence of the defendant's interference. *Tri–Continental*, 540 S.W.2d at 216–17; *Mueller*, 972 F.2d at 938. In other words, a plaintiff must show that "the defendant's affirmative conduct caused the breach—that had it not been for the defendant's acts, the contract would have been performed." *Francisco*, 629 S.W.2d at 530 (citing *Tri–Continental*, 540 S.W.2d at 216).

As previously noted, the evidence of confrontations between defendant Mack and Paglin indicates that Mack and Paglin were struggling over on-site control of Chartnet. The depositions of defendants Thompson and Mack reveal that they frequently communicated about Chartnet matters, and that defendant Mack discussed Paglin's behavior and the confrontations between himself and Paglin with defendant Thompson. Thompson terminated the Employment Agreement between Chartnet and Paglin in a letter dated November 27, 1992.

Viewing the record in the light most favorable to plaintiffs, the court finds that this evidence would allow a reasonable fact finder to infer that defendant Mack's discussions with defendant Thompson constituted affirmative conduct that directly caused the alleged breach of the Asset Purchase Agreement and Employment Agreement. Thus, whether defendant Mack caused the alleged breach of the agreements in question constitutes a genuine issue of fact for trial.

Accordingly, the motion of defendant Mack for summary judgment on count IV of plaintiffs' first amended complaint is denied.

### F. Count VIII

Count VIII of plaintiffs' first amended complaint alleges that defendants Saztec, Dunne, Abernathy, and Thompson breached their fiduciary duties by causing Chartnet to breach the Asset Purchase Agreement by terminating Paglin, causing Chartnet to replace Paglin with inadequate personnel, and "[t]hreatening to starve Chartnet financially" if Paglin and GOT took legal action. First Am. Compl. ¶ 75.

At the outset, the court finds that count VIII sets forth both a shareholders' derivative claim by GOT against defendants Dunne, Abernathy, and Thompson, *see* Fed.R.Civ.P. 23.1,[4] and a direct claim by GOT, as Chart-

---

3. Relying on *Law Research Serv. of Missouri, Inc. v. Western Union Tel. Co.*, 336 F.Supp. 510, 511 (E.D.Mo.1971), plaintiffs argue that a claim for tortious interference does not require proof of direct "but-for" causation. Recent cases clearly repudiate this view of Missouri law. *See Tri–Continental Leasing Co.*, 540 S.W.2d at 216–17 (setting forth the two-step approach); *see also Francisco*, 629 S.W.2d at 520 (paraphrasing *Tri–Continental*'s "but-for" test); *Mueller*, 972 F.2d at 938 (relying on *Tri–Continental*).

4. Mo.R.Civ.P. 52.09 provides, in relevant part:

> In a derivative action brought by one or more shareholders.... [t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

net's minority shareholder, against Saztec, the majority shareholder, for breach of a fiduciary duty, *see Bayne v. Jenkins,* 593 S.W.2d 519, 532 (Mo. banc 1980) (stating that stockholders who act in concert to exercise control over a corporation are fiduciaries with respect to minority shareholders).

In their motion for summary judgment, the defendants contend that count VIII sets forth only a shareholders' derivative claim by GOT on behalf of Chartnet. However, count VIII specifically alleges that "Saztec owed and owes fiduciary duties ... to Chartnet's minority shareholder [*i.e.*, GOT]" by virtue of Saztec's position as majority shareholder. First Am. Compl. ¶ 74. Count VIII further alleges that "Saztec ... breached [its] fiduciary duties ... to Chartnet and its minority shareholder, G.O.T.," *id.* at ¶ 75, and that "Chartnet and its minority shareholder [*i.e.*, GOT] have been injured" as a result, *id.* at ¶ 76.

Based on the allegations set forth above, the court finds that count VIII pleads not only the derivative claim recognized by defendants, but also a direct claim by GOT, as Chartnet's minority shareholder, against Saztec, the majority shareholder, for breach of a fiduciary duty.[5]

Focusing on GOT's derivative claim, the defendants advance three arguments in support of their motion for summary judgment. First, defendants contend they are entitled to summary judgment because GOT did not make a demand for suit upon Chartnet's board of directors, as required by Fed. R.Civ.P. 23.1. Plaintiff GOT concedes that it did not make a demand on Chartnet's board, but alleges that a demand would have been futile because the individual defendants named in count VIII—defendants Dunne, Abernathy, and Thompson—constitute a ma-

jority of the Chartnet board and would not have consented to a lawsuit against themselves. First Am. Compl. ¶ 78.

To establish that a demand on a corporate board would be futile, Missouri law requires a plaintiff to allege "actual wrongdoing by a majority of the board." *See Dawson v. Dawson,* 645 S.W.2d 120, 127 n. 8 (Mo.Ct. App.1982). Defendants contend GOT has failed to allege or demonstrate any "actual wrongdoing" by the defendant board members.

The court rejects this argument. In count VIII, plaintiff GOT specifically alleges wrongful acts by defendants Dunne, Abernathy, and Thompson that, according to GOT, constitute breaches of the defendants' fiduciary duties. *See* First Am. Compl. ¶ 75. Furthermore, count VIII incorporates the preceding paragraphs of the complaint by reference, including plaintiffs' fraud claim against defendants Dunne, Abernathy, and Thompson. *See id.* ¶¶ 72, 75.[6] Defendants Dunne, Abernathy, and Thompson constitute a majority of Chartnet's five-member board of directors. Thus, contrary to the defendants' suggestion, plaintiff GOT has alleged "actual wrongdoing by a majority of the board," as required by Missouri law, *see Dawson,* 645 S.W.2d at 127 n. 8, and produced sufficient evidence to require a trial of its fraud claim against three of Chartnet's directors. In addition, the pleadings and the record of the steadily deteriorating relationship between Paglin and the defendants make it abundantly clear that a demand for suit upon Chartnet's board of directors would have been useless.

Accordingly, the court finds that plaintiff GOT's failure to make a demand for suit upon Chartnet's board of directors is excused

---

*Id.* Rule 23.1 is virtually identical to Mo.Sup. Ct.R. 52.09. The federal rule controls the determination of whether the allegations set forth in the complaint are sufficiently particular, while Missouri law determines whether the plaintiff has offered adequate reasons for excusing demand. *Kaufman v. Kansas Gas & Elec. Co.,* 634 F.Supp. 1573, 1576 (D.Kan.1986) (citing cases).

5. Obviously, count VIII is not as carefully drafted as it might have been. For instance, count VIII is labeled "Derivative Claim for Breach of Fidu-

ciary Duty," and does not identify GOT's direct claim against Saztec in the heading. First Am. Compl. at 20. In addition, the prayer for relief in count VIII seeks judgment in favor of GOT "on behalf of Chartnet," and does not explicitly seek relief for GOT in its own right. *Id.* at 22.

6. In Section III.D of this order, the court ruled that plaintiffs' fraud claim presents genuine issues of material fact that must be resolved at trial.

by the fact that such a demand clearly would have been futile.

 Defendants next argue they are entitled to summary judgment because GOT failed to make a demand for suit upon Chartnet's other shareholder, Saztec. However, as defendants recognize, "[a] shareholder need not make a demand to the other shareholders for suit where the officers or directors of the corporation have committed ultra vires, illegal or fraudulent acts." *Wolgin v. Simon,* 722 F.2d 389, 392 (8th Cir.1983) (citing cases). Defendants contend that the alleged acts of the individual defendant directors (Dunne, Abernathy, and Thompson) were not ultra vires, illegal, or fraudulent.

The court rejects this argument. As noted above, count III of plaintiffs' first amended complaint alleges that defendants Dunne, Abernathy, and Thompson engaged in fraudulent conduct, and count VIII incorporates those allegations by reference. In Section III.D of this order, the court ruled that plaintiffs' fraud claim presents genuine issues of material fact. Thus, GOT's failure to make a demand for suit upon Saztec is excused by the fact that three of Chartnet's directors are alleged to have committed fraudulent acts. *Id.*

Defendants find it significant that defendants Dunne, Abernathy, and Thompson are a minority of Saztec's nine-member board of directors. Thus, defendants argue, the other six members of Saztec's board could have ratified the actions of Chartnet's board of directors, even if those actions constituted a breach of a fiduciary duty. This argument is rejected because shareholders cannot ratify the fraudulent acts of corporate directors. *Id.*

 In addition, Missouri law exempts shareholder plaintiffs from making a demand for suit on other shareholders if the complaint "alleges a situation where the majority of the stockholders participated in the acts complained of, or, where the defendants sued are the holders of a majority of the shares, or other facts showing such a demand would be useless or futile." *Saigh v. Busch,* 396 S.W.2d 9, 18 (Mo.Ct.App.1965); *see also McLeese v. J.C. Nichols Co.,* 842 S.W.2d 115,

119 (Mo.Ct.App.1992). In the instant case, count VIII alleges that defendant Saztec, Chartnet's majority shareholder, participated in the acts that gave rise to GOT's derivative claim for breach of a fiduciary duty. In addition, the pleadings and the record of the steadily deteriorating relationship between Paglin and the defendants make it abundantly clear that a demand for suit upon Saztec would have been futile.

Accordingly, the court finds that plaintiff GOT's failure to make a demand for suit upon Saztec, Chartnet's majority shareholder, is excused by the fact that three of Chartnet's directors are alleged to have committed fraud, Saztec allegedly participated in the wrongful acts plead in count VIII, and because the record of this case demonstrates that a demand upon Saztec would have been futile.

 Defendants' third argument in support of their motion for summary judgment is that the corporate acts alleged in count VIII fall within the business judgment of Chartnet's board of directors. Missouri's business judgment rule prevents shareholders from bringing suit "[w]here the matter complained of calls for business judgment or discretion of a corporation's board of directors." *McLeese,* 842 S.W.2d at 120 (citing *Wolgin,* 722 F.2d at 393). However, the business judgment rule does not apply when the act complained of is ultra vires, illegal, or fraudulent. *Broski v. Jones,* 614 S.W.2d 300, 304 (Mo.Ct.App.1981) (citing *Saigh,* 396 S.W.2d at 22). In the instant case, plaintiffs allege that three of Chartnet's directors committed fraudulent acts, and count VIII incorporates those allegations by reference. Therefore, defendants' suggestion that they are protected by the business judgment rule at this stage of the proceedings is rejected.

Accordingly, the motions of defendants Saztec, Dunne, Abernathy, and Thompson for summary judgment on count VIII of plaintiffs' first amended complaint is denied.

### IV. Count VIII Must Be Amended

While the court rejects the defendants' motions for summary judgment on count VIII, it is apparent that plaintiff GOT's de-

rivative claim for breach of a fiduciary duty is plead defectively and must be amended.

By its terms, Fed.R.Civ.P. 23.1 requires that a shareholder's complaint "allege with particularity" the reasons why the demand requirements should be excused. Thus, Rule 23.1 imposes "[s]tricter pleading requirements ... than the usual requirement that the allegations of the complaint must only give fair notice of a claim," *Tabas v. Mullane,* 608 F.Supp. 759, 766 (D.N.J.1985); *see also Kaufman,* 634 F.Supp. at 1578 (discussing the requirements of Rule 23.1 and stating that the "liberal pleading requirement" of Rule 8 does not apply to shareholder derivative actions); *Allison v. General Motors Corp.,* 604 F.Supp. 1106, 1112 (D.Del.), *aff'd,* 782 F.2d 1026 (3rd Cir.1985).

Count VIII does not comply with these requirements. While the allegations of fraud set forth in count III justify GOT's failure to make demand for suit upon Chartnet's board of directors and majority shareholder, GOT's use of unspecific boilerplate clauses to incorporate those allegations into its derivative claim for breach of a fiduciary duty, *see* First Am. Compl. ¶¶ 72, 75, does not satisfy the stringent pleading requirements of Rule 23.1.

Therefore, the court grants plaintiffs leave to amend their pleadings. *See* Fed.R.Civ.P. 15(a). Plaintiff GOT is instructed to amend count VIII to "allege with particularity" the fraudulent acts of defendants Dunne, Abernathy, and Thompson that support GOT's derivative claim. GOT also must plead the connection between the defendants' allegedly fraudulent acts and GOT's failure to comply with Rule 23.1's demand requirements. For this purpose, the court grants plaintiffs ten days from the date of this order to file an amended complaint that complies with this order and the letter and spirit of Rule 23.1. *See id.*

*V. Conclusion*

For the reasons set forth above, it is

ORDERED that plaintiffs' motion to dismiss voluntarily counts V, VI, and VII of their first amended complaint is denied. It is further

ORDERED that plaintiffs are granted leave to amend their pleadings, and shall file an amended complaint that complies with sections II and IV of this order within ten days of the date of this order. It is further

ORDERED that the motion of defendant Saztec for summary judgment on counts I and II of plaintiffs' first amended complaint is denied. It is further

ORDERED that the motion of defendant Chartnet for summary judgment on count II of plaintiffs' first amended complaint is denied. It is further

ORDERED that the motion of defendants Chartnet, Saztec, Dunne, Thompson, and Abernathy for summary judgment on count III of plaintiffs' first amended complaint is denied. It is further

ORDERED that the motion of defendants Chartnet, Saztec, Thompson, and Mack for summary judgment on count IV of plaintiffs' first amended complaint is denied. It is further

ORDERED that the motion of defendants Saztec, Dunne, Abernathy, and Thompson for summary judgment on count VIII of plaintiffs' first amended complaint is denied.