972 F.Supp. 494 (1997)
Edward K. KLEWEIS and Debra S. Kleweis, Plaintiffs,
v.
TRANSPORT SUPPORT, INC., et al., Defendants.
No. 4:94-CV-2330.
United States District Court, E.D. Missouri, Eastern Division.
January 29, 1997.
Brian M. Wendler, Carlson and Wendler, Edwardsville, IL, for Plaintiffs.
Daniel T. Rabbitt, Jr., Rabbitt and Pitzer, St. Louis, MO, David E. Larson, Larson and Larson, P.C., Kansas City, MO, for Defendants.

MEMORANDUM
JACKSON, District Judge.
This matter is before the Court on the motion of defendants Ryder System, Inc. ("RSI") and Transport Support, Inc. ("TSI") for summary judgment. See Fed.R.Civ.P. 56. The plaintiffs have filed a response in opposition to the motion.
Plaintiffs bring this action against RSI, TSI, Ryder Automotive Operations, Inc. ("RAOI"), and Ryder Automotive Carrier Group, Inc. ("RACG") to recover damages for personal injuries plaintiff Edward Kleweis sustained on June 9, 1993. RSI is a holding company comprised of 100 subsidiaries including RAOI, Complete Auto Transit, Inc. ("CAT"), and RACG.[1] At the time of the injury, Kleweis was employed as a driver for CAT. Plaintiff's duties included loading automobiles onto trailers and transporting them to dealers. Kleweis was allegedly injured while attempting a ratchet "tie-down" on a model 3200 Delavan trailer manufactured by Delavan Industries, Inc., a subsidiary of RSI.[2]
Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to *495 any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

CLAIMS AGAINST RSI
In Count IX of their complaint, the plaintiffs allege that RSI, acting through RACG[3], "assisted in the distribution and/or design of and controlled or had the right to control, the products and/or services of its subsidiary corporations, including ... Delavan." The plaintiffs further allege that RSI "held itself out as the manufacturer of the trailer in question." Finally, the plaintiffs allege that Delavan and RACG acted as RSI's alter ego through RSI's "sham corporate structure."
Generally, an individual injured by the conduct of a corporation can only recover from that particular corporation. Radaszewski v. Telecom Corp., 981 F.2d 305, 307 (8th Cir. 1992), cert. denied, 508 U.S. 908, 113 S.Ct. 2338, 124 L.Ed.2d 248 (1993). The shareholders of a corporation, including the parent company if the corporation is a wholly-owned subsidiary, are not liable for the injury. Id. There are, however, exceptions to this general rule which allow the injured party to "pierce the corporate veil" and reach the assets of the parent corporation. In the present case, the plaintiffs seek to hold RSI liable for the conduct of its subsidiaries. In order to do so, the plaintiffs must show: (1) that the defendant completely dominates and controls the finances, policy, and business practices of the corporate entity with respect to the transaction in dispute; (2) such control must have been used by the defendant for an improper purpose; and (3) the defendant's control of the corporate entity must have caused the plaintiff's injury. Radaszewski, 981 F.2d at 306; Paglin v. Saztec Int'l, Inc., 834 F.Supp. 1184, 1191 (W.D.Mo.1993). To determine whether the parent controls the subsidiary for purposes of piercing the corporate veil, courts consider the following factors:
1) The parent corporation owns all or most of the capital stock of the subsidiary;
2) The parent and subsidiary corporation have common directors or officers;
3) The parent corporation finances the subsidiary;
4) The parent corporation subscribes to all of the capital stock of the subsidiary or otherwise causes its incorporation;
5) The subsidiary has grossly inadequate capital;
6) The parent corporation pays the salaries and other expenses or losses of the subsidiary;
7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;
8) In the written material of the parent corporation, the subsidiary is described as a department or division of the parent, or *496 its business or financial responsibility is referred to as the parent corporation's own;
9) The parent corporation uses the property of the subsidiary as its own;
10) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation and the latter's interest;
11) The formal legal requirements of the subsidiary are not observed.
Paglin, 834 F.Supp. at 1191-92 (citing Collet v. American Nat'l Stores, Inc., 708 S.W.2d 273, 284 (Mo.App.1986)). Depending on the circumstances, any combination of these factors may lead to a determination that the parent corporation sufficiently controls the subsidiary to allow piercing of the corporate veil. Paglin, 834 F.Supp. at 1191.
In the instant case, it is undisputed that RSI owns 100% of the stock of RACG which, in turn, owns 100% of the stock of RAOI. RSI and RAOI also have at least 11 common officers or directors. There is conflicting evidence regarding the amount of control RSI exercises over RAOI's finances. The defendant provided evidence that RAOI maintains financial records and bank accounts separate from RSI. The plaintiff, however, provided evidence that RSI files a single, consolidated tax return for all its subsidiaries, including RAOI, and that cash receipts by all companies are channeled into a central system of depository and disbursement accounts. There is also evidence that RSI pre-approves RAOI's capital budgets. The plaintiffs also provided evidence that RSI controls the "strategic direction" of its subsidiaries, including RAOI, through a corporate strategy council comprised of officers and directors of RSI. The plaintiffs also submitted evidence that RSI promulgates policies on certain issues, including safety and affirmative action, to which the subsidiaries are required to adhere. Based on the foregoing, the plaintiffs have presented evidence on several of the eleven factors set forth above. Accordingly, the Court concludes that there are genuine issues of material fact with respect to the amount of control RSI exercises over RAOI.
Next, RSI argues that it is not subject to alter ego liability because there is no evidence that it exercised its alleged control over RAOI for an improper purpose. This element requires the plaintiff to show that the control exercised by the defendant involved a fraud or wrong, the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights. Radaszewski, 981 F.2d at 306. The plaintiff argues that RSI violated a positive legal duty or engaged in an unjust act by withholding from Delavan and its successor RAOI injury reports regarding the Delavan trailers. The evidence supports plaintiff's theory that in the years prior to the plaintiff's injury, Delavan and RAOI did not receive information and studies compiled by RSI regarding the number and types of injuries sustained by employees while using the ratchet systems on Delavan trailers.[4] Furthermore, the plaintiffs argue that the failure to disclose the safety information discouraged Delavan and RAOI from modifying the trailers. In other words, if the safety information had been provided by RSI, Delavan would have been prompted to make appropriate safety modifications to the trailers prior to the plaintiff's injury. Based on the foregoing, the Court concludes that there are genuine issues of material fact regarding whether RSI exercised control over RAOI for an unlawful purpose which resulted in the plaintiff's injury.
The plaintiff also claims that RSI is liable for the plaintiff's injuries because of its actual or apparent involvement in the manufacturing of the Delavan trailer. In support of its motion for summary judgment, the defendant provided evidence that RSI was not involved in the design, manufacture or distribution of the trailers at issue in this *497 litigation.[5] In response, the plaintiffs submitted evidence that in written discovery in another case involving RSI, the defendant admitted to being the manufacturer of Delavan trailers like the one at issue in this case. Consequently, the Court concludes that there are genuine issues of fact concerning RSI's involvement in the manufacturing of the Delavan 3200 trailer.[6] Accordingly, the Court will deny defendant RSI's motion for summary judgment.

CLAIMS AGAINST TSI
TSI argues that it is entitled to summary judgment as to Counts XXVII through XXX because these claims are based solely on the alleged actions of Edward Schiemann, John Dooman, and William Pearsons, as agents or employees of TSI. These three individuals are no longer defendants in this case. On May 6, 1996, the Court dismissed the claims against them, concluding that Schiemann, Dooman and Pearsons were employees of the same company as the plaintiff, Complete Auto Transit ("CAT"), and as such were entitled to statutory immunity as supervisory co-employees of the plaintiff. In the claims against TSI, contained in Counts XXVII through XXX, the plaintiff alleges that Schiemann, Dooman, and Pearson were acting as the "agent[s] or employee[s]" of TSI. The complaint contains no other allegations against TSI. Because the Court previously determined that Dooman, Schiemann, and Pearson were not employees of TSI but of CAT, the claims against TSI arising from the alleged actions of these individuals, who were not employees or agents of TSI, must fail.[7] Consequently, the Court concludes that there are no genuine issues of material fact in regard to the claims against TSI; therefore, TSI is entitled to judgment as a matter of law.
NOTES
[1] RSI owns 100% of the stock of RACG. RACG, in turn, owns 100% of the stock of RAOI.
[2] In 1991, Delavan merged with another RSI subsidiary, RAOI.
[3] The plaintiff alleges that RACG is the successor to an unincorporated entity formerly known as Ryder's Automotive Carrier Division.
[4] For example, Delavan was not informed that in 1990, 622 drivers were injured while using the ratchet system of Delavan trailers.
[5] See the affidavits of Serge Martin, an attorney for RSI, and Michael Wagner, executive vice president of RACG.
[6] Prior inconsistent pleadings and admissions are admissible as substantive evidence in a subsequent lawsuit. See Dugan v. EMS Helicopters, Inc., 915 F.2d 1428, 1432 (10th Cir.1990); Williams v. Union Carbide Corp., 790 F.2d 552, 555-56 (6th Cir.1986).
[7] The plaintiffs ask the Court for leave to allow them to amend their complaint to add specific allegations against TSI. Dooman, Schiemann and Pearson were dismissed from this case in May 1996, more than eight months ago. The plaintiffs have had ample time to cure any defects in their complaint arising from that dismissal. Furthermore, this case is set for trial on February 12, 1997. Amending the complaint at this juncture would prejudice the defendant. Consequently, the Court will not allow amendment of the complaint.